Seldner *vs.* Smith and Wife.

pany is not liable to garnishment in this State, with respect to their liability upon the policies to Bittinger & Brother.

*Order affirmed.*

(Decided 25th June, 1874.)

LEWIS SELDNER *vs.* HORACE L. SMITH and MELISSA A. SMITH, his Wife.

*Replevin—Replevin Bonds—Defences to, and Measure of damages in suit on Replevin bond—Principal and Surety—Production of Writings—Evidence.*

Although, in this State, replevin is generally brought to try the right of *possession* merely, yet, under some circumstances, a verdict and judgment for the defendant in that action may be conclusive as to the want of *title* in the plaintiff.

Where in an action of replevin, the verdict and judgment were for the defendants, but the goods taken from them under the writ, had not been paid for by them, and they for any reason could not be held liable for the price thereof; then, in a subsequent suit by them upon the replevin bond, they can only recover the costs in the replevin suit and whatever profits, if any, the jury may find that they would have made in a sale of the goods had they not been replevied. In the suit on the bond, evidence tending to establish any of the above facts or the measure of damages under the above rule, is admissible.

In a suit on a replevin bond, certain evidence was held inadmissible, under the peculiar circumstances of the case, to show the value of the goods replevied, or fraud on the part of the defendant in the replevin suit.

Where the firm of T. I. & Co. sued out a writ of replevin, one of the said firm together with S. and B. having executed a replevin bond in the ordinary form, it cannot be said that the member of the firm executing the

Seldner *vs.* Smith and Wife.

bond was the principal, and S. and B. his sureties, but all the obligors in the bond were in fact the sureties of the plaintiffs.

A defendant was excused from producing, and delivering up at the trial table certain writings which, under ordinary circumstances, he would have been bound to deliver up; it appearing that he was disabled from doing so by reason of the interference of the plaintiff; that the writings had been previously tendered to the plaintiff and refused, and that the plaintiff could not be injured by their non-production.

A replevin bond is one of indemnity only, and a surety on such a bond is entitled to be subrogated to all the rights of his principal, and to avail himself of the same defences—recoupment, for instance—which were open to the latter.

A statement made by one party to induce another to offer a compromise is not a part of the offer of compromise, and its admissibility in evidence cannot be objected to on that ground.

APPEAL from the Superior Court of Baltimore City.

This was an appeal from a judgment against the appellant as surety on a replevin bond given on behalf of Tracy, Irwin & Co., of New York, in a replevin suit instituted by them against the appellees in the same Court, and decided in favor of the latter, on the 25th of September, 1872. The action on the bond was then brought on the 2nd October following, to the next ensuing rule day. At the trial below, the defendant, appellant here, took two bills of exception.

The *first exception* set out the evidence offered by the plaintiffs, a part of which was a paper marked "A." This paper contained a statement of the main points of evidence in the replevin suit, and of the prayers of both parties therein, together with the deposition of Mrs. Melissa A. Smith, taken on behalf of the defendants in the replevin suit. The exception stated all this evidence to have been offered by the plaintiffs in this suit for the purpose of showing that at the trial of the replevin suit, the questions whether the goods in controversy in that case had been purchased by Mrs. Smith, according to the evidence on

that point offered by the defendants in replevin, or whether said purchase was fraudulent, according to the evidence offered by the plaintiffs in the replevin, were submitted to the jury for their decision under the issues in the replevin suit.

The Court, (DOBBIN, J.,) admitted this evidence, subject to the defendant's exceptions to the admissibility of the same, and also to its admissibility for the object and purpose for which it was offered.

The exception was taken to the exclusion of that portion of the evidence of King and Wilkinson, which is set forth in the opinion of the Court.

The *second exception* was to the granting by the Court of the plaintiffs' motion to strike out the evidence taken under a commission to New York, and the evidence of I. Moelinger, and to the ruling of the Court upon the prayers of the respective parties.

Under the New York Commission the depositions of Stephen D. Van Schaick, and of B. Y. Pippey were taken.

Van Schaick testified, among other things, that he was the counsel of Tracy, Irwin & Co., and that, after the seizure of the goods under the writ of replevin, he wrote to Mrs. Smith, enclosing to her the three promissory notes which she had given for the price of the goods, together with such papers given by Mrs. Smith as security for the same, as were in the possession of his clients, and offering to surrender, cancel and release the other securities which had not been returned to them from the respective record offices, but that Mrs. Smith refused to receive the letter with its enclosures, and returned it to him.

Tracy, Irwin & Co., filed their petition in bankruptcy on the 25th of January, 1868, and received their discharge on the 3rd day of December, 1868.

Pippey, who was one of their assignees, testified that he had quite a number of conversations with Mrs. Melissa A. Smith, in respect to the transactions between her and the

firm of Tracy, Irwin & Co., and in respect to her indebtedness to said firm, and the notes or securities given by her to them on account of the purchase made from them in 1867.

"Such conversations commenced in November, 1872, and the last one took place in January, 1873; there were several of them; they occurred in every instance by Mrs. Smith calling upon me at my office, except one, and that was at the Register's office at the solicitation of Mrs. Smith's counsel; at the first interview Mrs. Smith called and introduced herself, explaining to me her version of the relations between Tracy, Irwin & Co. and herself; she stated that she had purchased goods of them in 1867, to the value of about $10,000 ; that those goods were shipped to Baltimore, and subsequently replevied by Tracy, Irwin & Co.; that at the time she bought the goods, she gave her notes for the amount, which notes were secured by three mortgages on real estate in three Southern States; that some one now held those mortgages and notes, and she wanted me, as one of the assignees, to take possession of them; that she would thereupon give me, as assignee, a deed of one of the pieces of property, and the assignees should give her a release of the other two pieces; that Mr. Van Schaick held the notes and mortgages, and she wished me to obtain them from him; I replied that I did not understand my duty to require me to do anything of the kind; very soon after this I was summoned before the Register, when Mrs. Smith and her counsel made a proposition substantially like the foregoing; I refused to comply with her request, at least until I had taken legal advice; she afterwards called upon the other two assignees and upon me, quite a number of times, urging the accomplishment of her wishes; she said it was a very hard case for her that she couldn't give title to her property owing to these mortgages, whereupon I proposed to, at once, give her full and free release and satisfaction of the mortgages,

and relinquish the notes to her, and at my own expense, to get an order from Court approving or directing me to do so; she declined to accept this, and declined to give any valid reason for refusing; she again urged me to take possession of these notes and mortgages with a view of compromising them with her; I claimed that I had no right to take them, as they were not our property; at another time she urged the same thing with some variations, and offered to pay me and my counsel for whatever trouble we might have in the matter. At another time she denied that her object was simply to get possession of her property, but to have the assignees take possession of it, and when urged for her truthful reason intimated that she wanted us to take such possession for the effect it would have in this present suit.''

The defendant proved by Moelinger, (subject to exceptions,) that he is book-keeper of the defendant, and that on the 6th day of January, 1873, the plaintiff, Horace L. Smith, called at defendant's store in Baltimore, in regard to the present controversy, and after introducing himself as the husband of Mrs. Melissa A. Smith, said, that as defendant was an innocent party, he had advised his wife to make a compromise with him, and asked defendant what he was disposed to do; to which defendant replied, that he had no proposition to make except this, that he would procure from New York, and return to her the promissory notes and a release of the mortgages which she had given to Tracy, Irwin & Co., for the original purchase of the goods; to which Smith replied, that his wife had just returned from New York the Saturday previous, and had brought with her the promissory notes and all the papers she had given to Tracy, Irwin & Co., when she made the purchase in question; Smith added, that his wife had sold a piece of property in Montgomery, Alabama, and had paid up the notes and released the mortgages with the proceeds.

The witness being asked, on cross-examination, whether Smith was not drunk upon the said occasion, replied that he was perfectly sober.

Such other matters in evidence as are necessary to an understanding of the case are stated in the opinion of the Court.

The plaintiff offered the prayers following :

1. That the verdict and judgment in the replevin suit, establish conclusively that the goods replevied in that case, were not the property of Tracy, Irwin & Co., and that they had no right to take the same ; and if they find that said goods were taken under said replevin by Tracy, Irwin & Co., from the possession of the plaintiff, Melissa A. Smith, or her agents, and that they were not returned to her or the plaintiffs, then their verdict must be for the plaintiffs ; and the measure of damages is the costs of the replevin suit, and the value of the goods at the time they were taken, with such interest on said value as the jury may allow, and the appraisement offered in evidence, is *prima facie* evidence of the value of said goods.

2. That if the jury find that at the trial of the replevin suit, of which the record has been offered in evidence, the parties to said suit offered in evidence before the Court and jury, the proof mentioned and referred to in the paper "A," and that the contention and proceedings in the said cause of the respective parties before the Court and jury, were such as is set forth in said paper "A," and the proof referred to therein, and that the verdict and judgment in said case were in favor of the defendants in that suit, and that the plaintiffs in said suit were the same Tracy, Irwin & Co. mentioned in the bond now sued upon, and the defendants therein were the present plaintiffs, and the goods therein referred to, were the same goods that are mentioned in the schedule and appraisement offered in evidence, then the verdict and judgment in the replevin suit, established conclusively the title of said plaintiffs to said goods at the time the same were replevied, and no evidence can be received to the contrary.

3. That the deposition of Mrs. Melissa A. Smith, offered in evidence by the defendant, is not admissible for the purpose of showing that at the time the goods were replevied, they were the property of Tracy, Irwin & Co.

The defendant offered the following prayers:

1. That the testimony offered by the plaintiffs, and mentioned in the paper marked "A," was not admissible in evidence, and the jury ought to exclude it from their consideration.

2. That the testimony mentioned in the last prayer was not admissible in evidence, for the purpose for which the same was offered.

3. That the testimony offered in evidence by the plaintiffs, is not sufficient to prove that the property taken under the writ of replevin, was the separate property of the plaintiff, Melissa A. Smith, as averred in the declaration.

4. That if the jury shall find from the evidence, that the plaintiffs in the replevin suit did, on the 25th of January, 1868, petition for the benefit of the Bankrupt Laws of the United States, and that assignees were duly appointed thereafter, to take charge of their estate, and received assignment thereof in due course, and that said petitioners were duly discharged as bankrupts on the 3rd of December, 1868, from all debts and claims existing at the time of their application ; and shall further find, that the goods purchased from Tracy, Irwin & Co., and subsequently replevied, were sold and purchased on credit, and that the notes of Melissa A. Smith, secured by mortgages, were given thereafter, as shown in evidence by the defendant, and that the said notes have matured, but have not, nor has any of them, or the said purchase money, been ever paid, in whole or in part, and that said notes and mortgages were never parted with in whole or in part, by said Tracy, Irwin & Co., but belonged to them at the time of their bankrupt application and the assignment of their

estate to their assignees as aforesaid, and have never been parted with by said assignees, or satisfied to them in whole or in part, but have remained, as shewn by Mr. Van Schaick in his testimony, then the defendant is entitled to be credited by the jury, with such amount as they may find still due upon said notes, and to have the same deducted from the amount, for which he might otherwise be liable in this action.

5. And if the jury shall find the facts set forth in the fourth prayer, the plaintiffs cannot recover in this action more than the costs in the replevin suit and nominal damages.

6. That the bond upon which this suit was instituted, was given for the indemnification of the plaintiffs, and nothing more; and the actual damage sustained by the plaintiffs from the taking of the goods under the replevin, is the measure of the damages, which they are entitled to recover in this action.

7. In estimating the damages which the jury may find they have the right to take into consideration the following facts, if found by them :

1. The tender of return of the notes and release of mortgages, as stated by the witness Van Schaick.

2. The fact that the purchase money for said goods has not, nor has any part thereof ever been paid, and that the same are still held, as proven by Van Schaick.

3. The tender of Pippey, the assignee, to surrender the notes and release, or procure to be released, the said notes and mortgages.

4. The tender of Seldner to Smith, to procure and return to him the said notes and mortgages.

The Court granted the first and third prayers of the plaintiffs, but rejected their second prayer, and granted the second prayer of the defendant, but rejected all his other prayers, assigning as a reason for rejecting his sixth prayer, that it was calculated to mislead the jury, and as a

reason for rejecting his seventh prayer, that the Court was of the opinion, and so instructed the jury, that none of the facts in said prayer enumerated, were competent to go to the jury under the issues joined in the cause.

To the granting of the plaintiffs' first prayer, and the rejection of the defendant's first, third, fourth, fifth, sixth and seventh prayers, the defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before STEWART, GRASON, MILLER, ALVEY and ROBINSON, J.

*John H. Thomas* and *S. Teackle Wallis*, for the appellant.

*Francis P. Stevens* and *Charles Marshall*, for the appellees.

GRASON, J., delivered the opinion of the Court.

At the trial of this case, the defendant offered to prove by King and Wilkinson, that they were applied to by Mrs. Melissa A. Smith, one of the appellees, by her proper agent and by her authority, to sell for her as rapidly as they properly could, the goods purchased by her two or three days before of Tracy, Irwin & Co. of New York, and which were the subject of the replevin suit, in which the bond sued on in this case was given; that the said sale was to be for cash, and that although the transaction was an unusual one, they agreed to make it in consideration of a commission of five per cent. their regular commission in the ordinary course of their business, being from one to two and a-half per cent.; that as part of the transaction, they were to advance to Mrs. Smith, three thousand dollars, upon the goods upon receiving possession of them, with the invoices; that the goods were accordingly on a dray, in the course of trans-

portation from the warehouse of McCleish, Rives & Co. of Baltimore, where the goods had been left by Mrs. Smith, to the salesrooms of the witnesses on German Street, when they were seized by the sheriff under the writ of replevin. That if sold for cash by a commission house, in the manner in which this firm was about to sell them under the arrangement with Mrs. Smith, they would not have brought more than seventy-five cents on the dollar of their cost, and probably not more than fifty cents at the outside; that but for the seizure of the goods, as aforesaid, under the replevin, they would have proceeded to sell them as directed, as soon as they could have closed them out, and at such prices as could be obtained for them, no limit having been put on them; and further, that the prices they would have obtained for them, would have been the best that could have been obtained in the market by that mode of sale. The admissibility of the evidence thus offered, was objected to by the appellees, the objection was sustained, and the ruling of the Court in this respect, forms the subject of the first exception. We are of opinion, that the evidence thus offered, was not admissible for the purpose of proving the value of the goods replevied. The price which the goods would have brought at a sale, made in accordance with the arrangement with Mrs. Smith, would not have furnished a true test of their actual value. It is evident, that if sold in that mode, the goods must have sold below their actual value, and the true test of their value, was their actual worth at the time of their seizure, and not what they would probably have brought at a sale made in the mode named, a mode no doubt consented to by Mrs. Smith, in order that she might be enabled to receive an advance of three thousand dollars upon the goods. Her necessities may have compelled her to consent to such a mode of sale, notwithstanding such sale would result in a realization of less than the cost of the goods, and the agreement upon her part to have them so sold, furnishes no evidence of their actual value.

Nor was this evidence admissible for the purpose of showing fraud committed by Mrs. Smith in the purchase of the goods. It is true that at the time of the purchase, she stated to Tracy, Irwin & Co. that she wanted the goods to sell in a retail dry goods store in Baltimore; but she had given her notes for the purchase money, secured by three mortgages on real estate, and no evidence whatever was offered tending to prove that she did not own the real estate described in the mortgages, or that it was so encumbered as to make the security doubtful, or that there were any other circumstances surrounding the transaction of a fraudulent character, or that were calculated to lead to the conclusion that the mortgages were unavailable as security for the payment of the notes. If the security for the payment of the price of the goods was ample, how could the mode of their sale, or a probable loss upon such sale affect Mrs. Smith's title to the goods, or confer upon Tracy, Irwin & Co. any right to interfere with them. If the security taken by Tracy, Irwin & Co. was good and available it mattered not, so far as they were concerned, whether Mrs. Smith sold the goods at a profit or loss. If the goods had been bought by Mrs. Smith and Tracy, Irwin & Co. had been induced to sell them to her under her representations that she wanted them to sell in a retail dry goods store in Baltimore city, and she had neither paid for them, nor given security for payment, and had immediately upon getting possession of them made such an arrangement for their sale as the appellant offered to prove she had made with King and Wilkinson, such proceedings upon her part would have been admissible, as tending to show fraud upon her part in the purchase, and thereby to annul the sale. But we think that the question of title to the goods was conclusively settled by the verdict and judgment in the replevin suit. It is true that in this State a verdict and judgment for a defendant in a replevin suit is not always conclusive as to the want of

title in the plaintiff. This action *is* most frequently brought to try the right of possession only, and if it appear at the trial that the right to the possession is not in the plaintiff at the time of the institution of the suit, the verdict will be for the defendant.

The *title* may be in the plaintiff, while the *right of possession* for the time being may be in the defendant, or some other person. See *Cullum vs. Bevans,* 6 *H. & J.,* 470, 471; *Warfield vs. Walter,* 11 *G. & J.,* 85; *Mason vs. Sumner,* 22 *Md.,* 321; *McKinzie vs. Baltimore & Ohio Railroad Co.,* 28 *Md.,* 175. But in the replevin suit between Tracy, Irwin & Co. *vs.* the present appellees, no such right of possession merely seems to have been involved. The only proof offered on the part of the plaintiffs in that case appears to have been offered for the purpose of showing that the sale of the goods was made under such circumstances and representations, and the conduct of the purchaser with reference to the disposition of the goods after the sale to her, was such as to justify the vendors in annulling the sale and retaking the goods, and the evidence offered by the defendants in the replevin tended to show that the goods had been fairly purchased by Mrs. Smith, and the payment of the purchase money secured by her notes and mortgages. In other words, it appears that the *title* to the goods was put in issue and no evidence was offered by either party, except that which tended to support his *title*. We are therefore of opinion that under the peculiar circumstances of this replevin case, the verdict and judgment were conclusive as to the want of title of the plaintiffs in the replevin, and that the question of title could not be re-opened in this suit. But we think that the evidence excluded by the Court below was admissible for another purpose. In the event of the jury finding that the appellees were not entitled to recover in this case the *value* of the goods, but only the *profits* they would have reasonably made upon their sale, this evidence

was admissible and proper to be taken into consideration by the jury in determining the question whether the appellees would have made any profits at all, or incurred a loss in the sale of the goods. The Court below therefore erred in rejecting the evidence.

The evidence set out in the second exception was clearly admissible. In the case of *Belt vs. Worthington*, 3 *G. & J.*, 252, this Court said that the object of the law in prescribing that a replevin bond shall be entered into by the plaintiff before he should have the benefit of the writ, was only to give indemnity to the defendant. Judge ARCHER, in delivering the opinion of the Court in that case, says: "the recovery on the replevin bond ought to be moulded in such manner as will best subserve the principles of justice; the question of evidence must always be regulated by a reference to the rights decided in the action and the character of the bond." Judge ARCHER's language in that case is quoted with approval by this Court in *Mason vs. Sumner*, 22 *Md.*, 319, 320. In the case of *Walter and Warfield*, PURVIANCE, J., held that a plaintiff, in a suit on the replevin bond, can recover only the amount of the damage sustained by him personally, in consequence of the taking of the property from his possession, and refused to instruct the jury that the plaintiff, if they should find for him, was entitled to recover the *value* of the property mentioned in the schedule returned with the writ of replevin; and this ruling was affirmed on appeal to this Court, in 2 *Gill*, 216. If the appellees had sued Tracy, Irwin & Co. in trespass or trover for taking the goods in question and converting them to their own use, they could unquestionably have recouped from the plaintiffs' claim of damages the amount of the price of the goods which still remained due and unpaid. Without referring to authorities elsewhere to sustain this proposition, though they are numerous and full to the point, we deem it quite sufficient to refer only to the recent decisions of this Court in

the cases of the *Baltimore Marine Ins. Co. vs. Dalrymple,* 25 *Md.,* 308 ; *Dowler vs. Cushwa,* 27 *Md.,* 367, and *Warfield vs. Booth,* 33 *Md.,* 72, in which the doctrine of recoupment has been clearly and definitely settled. If then Tracy, Irwin & Co., in a suit against them could have recouped from the plaintiffs' damages the price of the goods which still remained unpaid, their surety in the replevin bond is also entitled to do so, for the bond being for indemnity only, the surety is entitled to be subrogated to all the rights of his principal, and to avail himself of the same defences which were open to him. This principle was recognized and applied by the Court of Appeals of this State in the case of *State, use of Scoffield's Adm'r, vs. Craddock,* 7 *H. & J.,* 41. That was a suit upon the bond of an administrator, *pendente lite,* against the surety, and the question was whether the surety could abate the suit by plea *puis darrein continuance.* After deciding that the principal could have so abated the suit against ·him, the Court say, "the question then is, can this privilege of the special administrator be extended to a suit on the administration bond against his surety? And why should it not be extended to him? Is the principal to possess a privilege which is denied to his surety?" And the Court concluded that the surety was entitled to the same privilege which was possessed by the principal. See also, *Bechervaise vs. Lewis,* 7 *Law Reps., Com. Pleas,* 376 ; *Pittman on Prin. & Surety,* 40 *Law Lib.,* 117, 118. But it was contended that the appellant is the surety of Strong, and not of Tracy, Irwin & Co., inasmuch as the latter are not obligors in the bond, and it is executed by Strong, Baker and the appellant. But while such is the case, the bond itself recites that Tracy, Irwin & Co. are about to sue out the writ of replevin, and they do in fact sue out the writ and become the plaintiffs in the replevin and all the obligors in the bond are in fact but the sureties of the plaintiffs in that suit. But in the answer of the appellees

in the name of D. & E. August & Co., to the petition of the appellant, filed in the bankrupt court of New York, they state that Seldner, the petitioner, became *surety* with Strong in the replevin bond. It is true that said answer is filed in the name of August & Co., but Mr. Stevens proved in this case that he went to New York on behalf of the appellees, that he never knew August & Co. until the day before the answer to the petition was filed, and that said answer was filed on behalf of and in the interest of his clients, the present appellees, as well as in behalf of August & Co. Their answer having alleged that the appellant, with Strong, became surety in the replevin bond, they cannot now be permitted to assert that Strong is principal in the bond, and that the appellant is his surety, and therefore not entitled to make the same defences in this suit, which were open to Tracy, Irwin & Co., in a suit against them for taking the goods. But it was further contended that, as the appellant had not the notes in Court to be delivered up and cancelled, the evidence in this exception was inadmissible. The appellant offered to prove, and, if the evidence had been admitted, would have shown that Tracy, Irwin & Co. had offered to deliver up to the appellee, Mrs. Smith, the notes and mortgages, and that Van Schaick had actually sent them to her by mail, and that she had received and returned them to him, declining to receive them, as was alleged in argument, because the offer to return them was coupled with a repudiation of the contract of the sale of the goods. The evidence would have further shown that these notes and mortgages are still in the possession of Van Schaick, the counsel of Tracy, Irwin & Co., and that the assignees in bankruptcy have never taken any steps to obtain possession of them upon the ground that the goods for which they were given went into the assets of the bankrupts, and their creditors got the benefit of them, and therefore that the assignees were not entitled to the notes and mort-

gages. The fact would have also appeared that both Van Schaick and the assignees in bankruptcy were and have been always willing that Mrs. Smith should have the notes and mortgages, and that Mr. Pippey actually offered at his own expense to get authority to deliver them to her, and that she refused to take them and urged the assignees to take possession of them and hold them, stating when pressed for her reason therefor, that she wished it done for the effect it would produce upon the trial of this case. And when the appellant filed his petition to Judge BLATCH-FORD, asking that they might be delivered to him, and stating all the facts connected with the transaction, .the appellees made use of the name of a creditor of the bankrupt firm to prevent the prayer of the petition from being granted, and did actually prevent it, the Judge denying the prayer of the petition without filing any opinion, or stating any reasons. It seems clear, therefore, that the appellees have no reason to complain that the notes and mortgages are not in their own possession, or that the appellant had not the notes in Court at the trial to be delivered up or cancelled, for it is manifest that they would neither receive them themselves nor let the appellant have them. Under such circumstances, the appellant can not be required to produce them in Court to be cancelled, nor to give bond to indemnify the appellees against any demand which might be made upon them for payment. Nor can any demand for payment be now successfully made against them. The notes are long since over-due, and any person to whom they might now be passed would take them subject to all the equities which the appellees may have, and therefore the latter would be entitled to set-off or recoup the value of the goods against the claim on the notes or mortgages for the purchase money, and thus prevent a recovery against them. If the assignees in bankruptcy proceeded upon them, the appellees would be entitled to set-off their claim of damages for taking the

goods and thus protect themselves. See *Sect.* 19 *of .the Bankrupt Law; Bump's Bankruptcy,* 6 *Ed.,* 76, 77, 415,. 416. But independently of the set-off authorized by the Bankrupt law, the appellees, in any suit against them to recover the amount of the notes or mortgages, would have the right to recoup the value of the goods from the amount of the claim upon the notes. In any aspect of the case, therefore, the appellees cannot be injured by the non-production of the notes in Court, at the trial of this case, to be cancelled. There can be no good ground for requiring their production, as it was not necessary for the protection of the appellees. If they had been destroyed, proof of that fact would have furnished a sufficient excuse for not producing them. 2 *Parsons on Bills and Notes,* 303, 304. If it appear that the appellees cannot be injured by not producing them, they have no right to require their production, and especially when they have utterly refused to accept them when offered, have prevented the appellant from getting possession of them in order that he might produce them, and have made repeated efforts to induce the assignees to take possession of and hold them for the purpose, as Mr. Smith stated, of producing an influence and effect upon the result of this case. The evidence in this exception was clearly admissible, and ought to have been permitted to go to the jury. The objection to the admissibility of Smith's statement to Moelinger, that his wife had just come from New York and brought the notes, &c., with her, on the ground that it was made in an offer of a compromise, is not tenable. The statement was no part of the offer of a compromise, but was merely a statement made by Smith to induce Seldner to offer a compromise, and was not liable to the objection urged.

From what we have said, it follows that the measure of damages fixed by the appellees' first prayer was, under the peculiar facts and circumstances of this case, erroneous, and there was error in granting it. If the goods had

Seldner *vs.* Smith and Wife.

been paid for by the appellees, or they could now be held liable on the notes or mortgages, the measure of damages fixed by the first prayer would not have been liable to objection. But as the goods have not been paid for, and no recovery can be had against the appellees, they can recover in this case only the costs in the replevin suit and whatever profits, if any, the jury might find that the appellees would have made on a sale of the goods, had they not been taken under the writ of replevin.

The deposition of Mrs. Smith was not admissible for the purpose of showing that at the time the goods were replevied, they were the property of Tracy, Irwin & Co. We have already said that in this particular case, the verdict and judgment were conclusive against the title of Tracy, Irwin & Co., the plaintiffs in the replevin. The appellees' third prayer was therefore properly granted.

The appellant's first prayer was properly rejected. The paper marked A, was clearly admissible for the purpose of showing what had been put in issue in the replevin suit, and upon what points evidence had been offered in that case.

We are also of opinion that the appellant's third prayer was properly refused. There is evidence in the record legally sufficient to be submitted to the jury, tending to prove that the goods replevied were the separate property of Mrs. Smith. The fourth, sixth and seventh prayers ought to have been granted, and it was error to reject them.

The fifth prayer was properly rejected, as it is inconsistent with the sixth prayer which we have stated sets forth the correct measure of damages in this case.

*Judgment reversed, and*
*new trial awarded.*

(Decided 25th June, 1874.)