SARAH OWENS, and IDA CROW in her own right *vs.* IDA CROW, Executrix of JOHN T. CROW, EDWARD W. HUBARD, Executor of SUSAN W. CROW.

*Trust and Trustee—Limitations—Laches—Account—Rents and Profits—Interest—Competency of Witness under the Act of 1868, ch. 116, and Supplements—Equity practice—Parties.*

Where leasehold or personal property is conveyed to one in trust, for the sole use and benefit of another, and no duties are imposed upon the trustee, and no functions are to be performed by him, the beneficiary is the real owner of the property, and the absolute legal estate will be vested in him by operation of law, whenever, for any purpose, it is necessary that he shall have it.

In such case the trustee cannot hold the legal estate as against the beneficiary, or, if he be an infant, as against his guardian.

The object of appointing the trustee is to enable him to receive the legal title to the property from the grantors, and as soon as this object is accomplished there is no longer any reason for continuing the trust.

On the 8th of September, 1860, J. T. C. and M. E. C. his wife, executed a deed whereby they conveyed to S. O., all the property of the said M. E. C., in trust, for the sole use and benefit of I. C., the infant daughter of the grantors. The property consisted of the leasehold interest in a house and lot in the City of Baltimore, some household furniture, and three slaves. Shortly after the execution of the deed M. E. C. died. The trustee took no control over the property, but it was managed and controlled by J. T. C., the father, from the time of the execution of the deed until his death. He occupied the house a portion of the time, and for several years he rented it out and received the rents. He held possession of the slaves until their emancipation in 1864, making use of their services as household servants; and he used the furniture in the house until he discontinued housekeeping, when he sold it. In his dealings with reference to this property he sometimes described himself as " Guardian," and sometimes as " Guardian for the use of I. C. ; " and he stated that the house was rented for her benefit. In

Owens and Crow *vs.* Crow and Hubbard.

January, 1874, he made a will in which he left her all his property. On the 2nd of February, 1881, he married again, and on the 23rd of March following, he died, leaving his will unrevoked. His last wife survived him, and died in December, 1881, leaving a will. His daughter I. C., attained the age of twenty-one years on the 7th of May, 1878. On a bill filed on the 13th of April, 1882, by the trustee S. O., and the daughter I. C., in her own right, against herself as executor of her father, and against the executor of her father's deceased widow, for an account of the rents, hires and profits of the property embraced in the deed, and of the moneys collected by the father in his life-time, for the benefit of his daughter, it was HELD:

1st. That the bill was filed within the time of limitation fixed by the statute for proceedings against the estates of deceased persons.

2nd. That the daughter being in reality the owner of the property both at law and in equity, and S. O. the trustee, being without title, estate, or interest in the property, no plea of limitations could bar the right to an account in this case, and consequently no imputation of *laches* could lie against this proceeding.

3rd. That the Court did not mean to imply that even if the trustee S. O., could be considered as the real complainant, that this was a case for the operation of the doctrine of *laches*.

4th. That S. O. was not a necessary party in the case.

5th. That I. C. was entitled to an account, as against her father's estate, of the rental value of her house during the time he occupied it, and of the rents and profits which he received when it was rented out; with a due allowance for taxes, repairs and other necessary expenses; and of the value of the services of the slaves during the time he kept possession of them, with proper deductions for their support and maintenance, without interest however on the sums found due from these sources.

6th. That the estate ought not to be chargeable for the use of the furniture by J. T. C., in the house where he and his daughter dwelt; but he must account for the price for which it was sold, but without interest.

7th. That as the Court felt entirely satisfied that J. T. C. was acting in the utmost good faith, and from an affectionate desire to promote the best interests of his daughter; if the proof should hereafter show that his own means were not adequate to the expense of the education which he bestowed upon her, or the style in which he

maintained her, a reasonable allowance must be made to his estate out of the amount found due to I. C.

8th. That I. C. and S. O. were not competent witnesses in this case, being within the exceptions mentioned in the Act of 1868, ch. 116, and its supplements.

9th. That the practice which has to some extent prevailed, of putting the same individual on opposite sides of the record, is objectionable, and cannot be tolerated by the Court.

10th. That if a person occupying the position of a trustee or executor, has a claim against the trust property which he wishes to prosecute in a Court of equity, he can file a bill against the beneficiaries who have the real interest in the property, and obtain such redress as he is entitled to receive, and the adverse interests will be adequately represented.

11th. That in this case, I. C. as executrix of J. T. C. ought to occupy the position of complainant, and the only defendant should be the executor of S. W. C., deceased.

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken from the decree of the Court below, dismissing the bill of the complainants with costs. The case is stated in the opinion of this Court.

The cause was argued before MILLER, YELLOTT, ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*J. J. Wade,* for the appellants.

*John T. Mason, R.,* and *John Prentiss Poe,* for the appellee, Edmund W. Hubard, executor of Susan W. Crow.

*Isaac D. Jones,* for the appellee, Ida Crow, executrix of John T. Crow.

BRYAN, J., delivered the opinion of the Court.

On the eighth day of September, 1860, John T. Crow and Mary E. Crow, his wife, executed a deed, whereby

they conveyed to Sarah Owens, all the property of every kind, which belonged to the said Mary E. Crow, in trust for the sole use and benefit of Ida Crow, the infant daughter of the grantors.    The infant was, at that time, a little more than three years of age.    Shortly after the execution of this deed Mrs. Crow died.

It does not appear that any of the property conveyed was real estate; it consisted of a leasehold interest in a house and lot in the City of Baltimore, and some household furniture, and three slaves, two women and a boy. Although Sarah Owens was named as trustee in the deed, no duties were imposed upon her, and no functions were to be performed by her.    She held the dry legal estate, and the only effect of naming her in the deed was to enable her to hold it.    The beneficiary, Ida Crow, was the real owner of the property, and the absolute legal estate would have been vested in her by operation of law, whenever, for any purpose, it was necessary that she should have it.    The trustee could not hold the legal title as against her, or as against her guardian.    As the trustee had no duties to perform, there was no purpose for which the trust could be continued in existence.    The object of appointing the trustee was to enable her to receive the legal title to the property from the grantors, and as soon as this object was accomplished, there was no longer any reason for continuing the trust.    " When a trust has been created in personalty, and all the purposes of the trust have ceased, or are at an end, the absolute estate is in the person entitled to the last use."    *Denton vs. Denton*, 17 *Md.*, 407. Miss Owens having no duties to perform in reference to the property, took no control over it, but it was managed and controlled by John T. Crow, the father, from the time of the execution of the deed until his death.    He occupied the house a portion of the time, and for several years he rented it out, and received the rents; he held possession of the slaves until the emancipation in 1864, making use

of their services as household servants; and he used the furniture in the house until he discontinued housekeeping, when he sold it. In all his transactions with reference to this property, Mr. Crow was acting for the benefit of his daughter Ida; in his dealings he sometimes described himself as "guardian," and sometimes as "guardian for the use of Ida Crow;" and he stated that the house was rented for her benefit. She was his only daughter, and his only child by her mother. She and Miss Owens lived in the same house with him until 1869, when Miss Ida was sent to boarding school by him. In all his intercourse with his daughter he shewed himself to be a fond and affectionate father, very solicitous for her welfare and happiness. It would be the grossest injustice to his memory to suppose that he was capable of making any adverse claim to her property, or that he was acting otherwise than in the capacity of her guardian, as he styled himself in his dealings with her property. On the contrary, as early as January, 1874, he made his last will and testament, by which he left her all his property, to the entire exclusion of a son by a former marriage; and we learn from the probate proceedings that he delivered the will to her in his life-time, and permitted it to remain until his death. He married a third wife on the 2nd of February, 1881, and died on the 23rd of March in the same year, leaving his will unrevoked.

This bill is filed for an account of the rents, hires and profits of the property embraced in the deed, and of the money collected by Crow in his life-time for the benefit of his daughter. Miss Crow attained the age of 21 years on the seventh day of May, 1878, and the bill was filed on the 13th of April, 1882, within the time of limitation fixed by the statute for proceedings against the estates of deceased persons. Miss Crow being in reality the owner of the property, both at law and equity, and Miss Owens being without title, estate or interest in the property, it is

very clear that no plea of limitations could bar the right to an account in this case, and consequently no imputation of *laches* could lie against this proceeding. And we do not mean to imply that even, if Miss Owens could be considered as the real complainant, that this is a case for the operation of the doctrine of *laches*. Here is the case of a father professing, and truly professing, to be acting for the benefit and interest of his only daughter; taking care of her property, renting it out, and collecting the rents for her, as her guardian; stating that he is acting in her behalf and shewing the sincerity of his affection for her, by making a will, giving all his property to her, and placing that will in her hands for safe-keeping. It is simply impossible for a Court of equity to hold that such a man can be regarded as a trespasser, acting adversely to the interests of his only daughter, and committing daily and hourly a breach of trust. We are obliged to recognize him, as he really was, and professed to be,—an honest and faithful trustee, voluntarily assuming that character for the benefit of the dearest object of his affection, and collecting and holding her money for her benefit. As a trustee making no claim to the property in his own behalf, but always acknowledging the title of the beneficiary, the bar of the statute of limitations could not commence to operate in his life-time; no cause of action could originate against him until he made an adverse claim, and as a matter of course, there could be no imputation of *laches* for not commencing proceedings. To avoid all misapprehension, it is best for us to say that we do not think that Miss Owens was a necessary party in this case. The learned Judge of the Circuit Court held that the bill was barred by *laches* and lapse of time; it will be seen that we dissent from his conclusion. We think that Miss Crow is entitled to an account, as against her father's estate, of the rental value of her house, during the time he occupied it, and of the rents and profits which he received, when it was rented out; with a due

Owens and Crow *vs.* Crow and Hubbard.

allowance, of course for taxes, repairs, and other necessary expenses; and of the value of the services of the slaves, during the time he kept possession of them, with proper deductions for their support and maintenance, without interest, however, on the sums found due from these sources. We do not think that the estate should be chargeable for the use of the furniture by Mr. Crow in the house where he and his daughter dwelt; but he must account for the price for which it was sold, but without interest. As we feel entirely satisfied that Mr. Crow was acting in the utmost good faith, and from an affectionate desire to promote the best interests of his daughter; if the proof should hereafter show that his own means were not adequate to the expense of the education which he bestowed upon her, or the style in which he maintained her, a reasonable allowance must be made to his estate, out of the amount found due to Miss Crow. We are of opinion that Miss Crow and Miss Owens were not competent witnesses in this case ; they are clearly within the exceptions mentioned in the Act of 1868, ch. 116, and its supplements.

As Mr. Crow left a surviving widow, the will was not operative against her distributive share of her husband's estate. She died in December, 1881, and Edmund W. Hubbard became her executor. The bill in this case is filed by Sarah Owens, and Ida Crow in her own right, against Ida Crow, executrix of John T. Crow, and Edmund W. Hubbard, executor of Susan W. Crow. We feel obliged to express our disapproval of a practice which has to some extent prevailed, namely, that of putting the same individual on opposite sides of the record. In this case we see the name of Ida Crow as complainant in her own right, and the same person appears as defendant in her capacity of executrix. It is true the responsibilities of the two capacities are different, but they are sustained by the same individual. It is a solecism in jurisprudence for a party to sue himself. The same will would control both

the prosecution and the defense, and there would be no real contestation. There is no propriety in such a practice, and no necessity for it. If a person occupying the position of a trustee, or executor, has a demand against the trust property which he wishes to prosecute in a Court of equity, he can file a bill against the beneficiaries, who have the real interest in the property, and obtain such redress as he is entitled to receive, and the adverse interest will be adequately represented. But if he should be permitted to file a bill against himself as executor or trustee, it is obvious that he would have control of both sides of the litigation. We cannot tolerate such a practice; although in the present case it was as free from objection as it could be in any other instance.

We are not unmindful that by the statute law, a plaintiff may lay an attachment in his own hands as garnishee, and proceed to condemnation as against a third person. This practice, however, is provided by the legislative will, which has power to authorize any form of proceeding; and in the case mentioned, all inconvenience is obviated by the circumstance that the person claiming the funds attached has a right to intervene and contest the plaintiff's right of condemnation.

In this case Ida Crow, as executrix of John T. Crow, ought to occupy the position of complainant, and the only defendant should be the executor of Susan W. Crow, deceased. He is the party interested in contesting the claims put forward in the bill of complaint, and he ought to be permitted to do so without being trammelled by being associated with the other defendant who is interested in maintaining them. We shall reverse the decree and remand the cause.

*Decree reversed with costs,*
*and cause remanded.*

(Decided 3rd July, 1884.)


ROBINSON, J., dissented.