JOSEPH P. ROWAN ET AL. *v.* STATE, USE OF. CHARLES E. GROVE

[No. 16, January Term, 1937.]

*Decided April 8th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*James Clark,* with whom was *H. Courtenay Jenifer* on the brief, for the appellants.

*Allan Eli Cohan* and *Cornelius V. Roe,* with whom was *Joseph L. Donovan* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

The equitable plaintiff, Charles E. Grove, appellee, brought suit in the name of the State, for his use, in Howard County, against Joseph P. Rowan, principal, and Frank G. Haller and Anna Haller, his wife, sureties on replevin bonds which Rowan had filed in a suit against Grove in Prince George's County.

The declaration says that on May 23rd, 1933, Joseph Rowan had issued, out of the Circuit Court for Prince George's County, a writ of replevin for a certain race horse named "Flying Max," tackle and other race horse equipment, then in possession of Charles E. Grove, and gave bond to the State of Maryland in the sum of $730, and on June 16th, 1933, an additional bond of $2,000, on both of which Frank G. Haller and Anna Haller, his wife, were sureties, conditioned for the successful prosecution of the suit, otherwise for the return of the property replevied; that Joseph P. Rowan did not prosecute the suit with effect, and when the suit was called for trial in the Circuit Court for Howard County, to which it had been removed, he failed to appear, and a judgment of *non pros.* was entered against him. Of the effect of Rowan's non-action in the replevin, it may be said, as in *Belt v. Worthington,* 3 G. & J. 247, 252: "The judgment by default in the replevin bond against the defendant, only admits, that he did not prosecute his writ of replevin with effect; and it is incumbent on the plaintiff in the action, to show the damage which he has sustained by the failure to prosecute." Rowan having failed to return the property replevied, Grove brought suit on the replevin bonds in Howard County, whence the case was removed to the Circuit Court for Baltimore County for trial, where it was tried by the court sitting as a jury, and from a judgment for the plaintiff, the defendants appeal.

It appears from the record that whatever title Grove had to the horse and tackle was derived from an attachment suit brought in Anne Arundel County by one Eddie Myers against Harold Latang, from whom Rowan claims

to have bought the horse several weeks before the attachment was issued.

The defendants reserved four exceptions, of which two were on objections to evidence, one, the third, to the court's refusal of ten of their eleven prayers, and the fourth was abandoned on appeal.

The defendants' A prayer is the usual demurrer prayer, and the first and second practically the same as the A prayer, for they asked the court to declare as a matter of law that the plaintiff was not entitled to a verdict for more than nominal damages.

These prayers directly raise the question of Grove's title to the horse, which it is admitted was derived from the attachment proceedings, and assume that his failure to show a good title would disentitle him to recover more than nominal damages, if anything. With all the presumptions in favor of the regularity of the attachment proceedings *(Davis v. Helbig,* 27 Md. 452, and note [Perkins Ed.] ; *West v. Wood Co.,* 140 Md. 514, 118 A. 69; 5 *Am. Jur.* 226, sec. 1033), they do not affect any rights that Rowan may have in the horse. 5 *Amer. Jurisprudence* 226, sec. 1033. It was replevied out of the possession of Grove, and if Rowan cannot prove his ownership, then it, or its value, goes back to Grove. *Glenn v. Fowler,* 8 G. & J. 340, 348. In this case, Rowan, if he is entitled to a verdict, must get it on the strength of his title, rather than on the weakness of Grove's. When Grove shows his title is by purchase from a sheriff executing a writ of *fi. fa.* on a judgment of condemnation, he makes out a *prima facie* case of right of possession. That, however, does not give him an absolute title to the property of a stranger to the attachment.

According to the record, Eddie Myers, a trainer, had in his custody a horse named "Flying Max," entered on the Maryland tracks as the property of H. Latang. Myers, claiming that Latang owed him five and a half months' wages (or salary) from May 17th, 1932, which would run to about November 11th, 1932, at $100 a month, and $100 for feed, caused a nonresident attachment to be

issued out of the Circuit Court for Anne Arundel County against Latang; the sheriff's return on the back of the writ being: "Attached as per schedule Dec. 10, 1932, and copy left in hands of Eddie Myers and summoned him as garnishee, short note posted on Court House door Dec. 10, 1933." He also filed a schedule of property attached, containing the following: "Attached Dec. 10, 1932, 1 race horse known as 'Flying Max,' 1 bridle, 1 saddle, 1 tool chest etc. all at Barn No. 8, Laurel Race Track, Md., and copy left with Eddie Myers, plaintiff, and summoned him as garnishee." An appraisal of the horse and tackle was made, a garnishee's case docketed in the name of "Eddie Myers vs. Eddie Myers, Garnishee of H. Latang," a judgment of condemnation *nisi* entered condemning the property of the defendant in the hands of the garnishee which, later, was made absolute, and execution ordered on the filing of a bond, and execution was issued against the goods and chattels in the hands of the garnishee and the horse, etc., sold after levy, advertisement, and sale, to Clyde E. Grove. There does not seem to have been any step in an orderly attachment missing. Code, art. 9; 2 *Poe's Pl. & Pr.* sec. 505 *et seq.* The defendants contend that the attachment was laid on the horse, and it should have been sold under the writ of *fi. fa.* against the horse, and not on a *fi. fa.* against Myers, garnishee. There is evidence in the record that the horse was, at the time, in the custody of Myers, and an attaching creditor can also be plaintiff and garnishee. Code, art. 9, sec. 10; 2 *Poe, Pl. & Pr.* 532; *Owens v. Crow,* 62 Md. 491, 498; *Albert v. Albert,* 78 Md. 338, 345, 28 A. 388; *Deibert v. State,* 150 Md. 687, 691, 133 A. 847.

The defendants' contention is, if we understand them correctly, that the horse never was sold by the sheriff, and this seems to be their reasoning. They find no complaint with the form of the proceedings up to the issuance of the writ of *fi. fa.* on the judgment of condemnation. The writ issued by the clerk commanded the sheriff to levy on "the goods and chattels, lands and tenements of the

said Eddie Myers, garnishee of H. Latang in your bailiwick being," which they contend is *in personam* against Myers and not *in rem* against the property, credits, etc., of Latang in his possession, and they rely on the case of *International Co. v. Terminal Warehouse Co.*, 146 Md. 479, 126 A. 902, of which we fail to see the application. The question there was the liability of the garnishee for merchandise it had released after the laying of the attachment, and whether it was liable *in personam* for the goods subject to the levy. The judgment of condemnation was of the "assets" in the hands of the garnishee, and the writ of *fi. fa.* was against the goods and chattels of "the said Eddie Myers, Garnishee of H. Latang," and not against Myers personally, and the only inference to be drawn from this language is that the goods of Latang in Myers' hands were to be sold and were later sold by virtue of the writ not only of *fieri facias*, but of the original writ as well, from which the purchaser's title was derived, and we do not think the form of the writ of *fieri facias* had the effect of changing what began as a proceeding *in rem* to one *in personam*. "Whatever may be the rights acquired by a purchaser, under an execution issued upon a general judgment, in this case, where the proceeding was *in rem* by attachment, and the judgment one of condemnation of the particular property, we are clearly of opinion that the lien of the judgment was a specific lien upon the property condemned, which related back to the time when the attachment was laid." *Cockey v. Milne's Lessee*, 16 Md. 200, 206. With respect to an attack such as is here made on the regularity of the proceedings as affecting Grove's title, it is said in *Ranoul v. Griffie*, 3 Md. 54, 60: "The principle is well settled, that the judgment of a court of competent jurisdiction, when coming incidentally in question, or offered as evidence of title in any court, is conclusive upon the question decided, and cannot be impeached on the ground of informality in the proceedings, or error or mistake of the court, in the matter which has been adjudicated." The person who might have been

affected by the form of the judgment or execution was not Rowan, but Myers *(International Co. v. Terminal Warehouse Co., supra)*, who is not here objecting to anything, and any objections to the proceedings which might have been raised, before the judgment became final, by him or any interested party could, if sustained, have been cured by amendment. Code, art. 9, sec. 28; *Gill v. Physicians' Bldg.*, 153 Md. 394, 138 A. 674. For the reasons given, we see no merit in the defendants' objections to the form and effect of any of the attachment proceedings.

No matter how regular the attachment proceedings may be, they cannot have the effect of divesting the true owner, a stranger to the suit, of his property. He may intervene by plea, motion to quash, or a claimant suit (1 *Poe, Pl. & Pr.* secs. 561-563), but he is not bound so to do *(Kilpatrick v. O'Connell, 62 Md. 403, 410)*, and may resort to an action of replevin to repossess himself of his property. *Burton v. Jennings*, 158 Md. 254, 148 A. 424. In this case Rowan heard of the attachment a few days after it was issued, but did nothing about it and went to Florida. Meanwhile the property was sold to Grove. Three months after the sale Rowan replevied the property. He was not bound to intervene in the attachment proceedings, though there are circumstances under which a claimant who is on notice of an attachment may thereafter be estopped from asserting a claim to property or credits garnished *(Fetterhoff v. Sheridan*, 94 Md. 445, 454, 51 A. 123, and cases there cited) but those cases do not apply to the facts of this case.

In this state the action of replevin does not necessarily try the title to the property replevied, as the action is possessory, and in a suit on the replevin bond the defendant (plaintiff in the replevin) may prove his ownership or title to the property. *Crabbs v. Koontz*, 69 Md. 59, 13 A. 591; *Fidelity & Deposit Co. v. Singer*, 94 Md. 124, 50 A. 518. It has been held, however, that if the title to the property is put in issue in the replevin suit, the judgment may be conclusive of ownership in a suit on the bond. *Seldner v. Smith*, 40 Md. 602, 613.

Rowan, the only witness on behalf of the defendants, testified that he had bought the horse, "Flying Max," from Harold Latang for $2,100, but could not enter it in his name because he had been ruled off the Maryland tracks, and was not reinstated until the spring or fall of 1935. In the meantime he replevied the horse and sold it to a Porto Rican for $800. If he had filed a claimant case, we can assume that he would have testified as he did in this case, and though his testimony was not contradicted by any other witness, the court could not have instructed the jury to find for him, as he would have had the burden of proving ownership and the jury might not have believed him. *Lemp Brewing Co. v. Mantz*, 120 Md. 176, 186, 87 A. 814; *Guyer v. Snyder*, 133 Md. 19, 104 A. 116; *Pennsylvania R. Co. v. Quality Products, Inc.*, 171 Md. 189 A. 200. He avoided the trial of his title in the replevin case and allowed a judgment of *non pros.* to be entered against him. He cannot now, though he is a defendant, escape the burden of proving ownership in the suit on his bond, and in setting up this defense his position is exactly that of a claimant in the attachment suit. With the equitable plaintiff, Grove, showing a *prima facie* title, at least, through the attachment proceedings, he meets the burden in this case, with Rowan assuming the burden of proving ownership to offset it, and the court could not grant a peremptory instruction for either, and was therefor right in refusing the defendants' A, first, and second prayers.

The court refused all of the prayers of the defendants except the ninth, a burden of proof prayer which was properly granted. It was error to refuse the third and eighth, which required the court, sitting as a jury, to pass on the question of Rowan's title to the horse, which was directly in issue; and, as required in the prayers, if they found Rowan to be the owner, they could only allow the plaintiff nominal damages. *Crabbs v. Koontz*, 69 Md. 59, 13 A. 591; *Belt v. Worthington*, 3 G. & J. 247.

The defendants' fourth, fifth, and sixth prayers should have been, as they were, refused, because they assumed

the attachment proceedings to be defective, which this court does not find. *Supra.* The seventh instructed the jury, if they found Latang had no title to the horse when levied on by the sheriff, then the sale passed no title to the horse and the verdict should be for nominal damages only. This is, in our opinion, not a correct statement of the law. Grove got his title through an attachment proceeding, good against any one except the true owner, and the question for the jury was not whether Latang had title, but whether Rowan had. The obligors on the bond are not concluded from showing the character of the plaintiff's possessory right. *Mason v. Sumner*, 22 Md. 312, 321.

The defendant Rowan's A prayer sought to instruct the jury that if they found for the equitable plaintiff, he was only entitled to nominal damages under the prayers asked by the defendants, and if they found that, prior to February 17th, 1933, the horse, "Flying Max," was in the possession of Rowan, that about that day Grove took it out of the possession of Rowan and entered it in races out of which Grove collected purses, then the moneys so collected should be awarded to Rowan. It has been held in this state that a surety, who is subrogated to the rights of the principal, is entitled to recoupment from the plaintiff in a suit on the bond, so that the theory of the prayer is correct (*Seldner v. Smith*, 40 Md. 602, 614; 3 *Sedgwick on Damages*, sec. 1041), but wrong in that it claims credit for any purses collected without deduction for expenses in caring for the horse. It also assumes, which is not the fact, that Grove took the horse from Rowan's possession, whereas he got it from the sheriff in an orderly proceeding.

The first exception was on the answer to a question put to Grove: "Tell what happened when he (Rowan) was there?" which was answered: "They got in touch with Mr. Rowan and had him in the office and they told Mr. Rowan that the horse belonged to me," which the court refused to strike out, though immediately before that the statement of Mr. Brown (a steward), "Well, Mr. Grove, you own this horse," was stricken out. Grove had testi-

fied that at a race meet at Havre de Grace, where he was racing the horse in 1933, before the replevin, Rowan had advised him that he owned the horse and demanded a part of a purse which it had just won. Grove reported the matter to the stewards at the track, who had a meeting three days later with Grove and Rowan, when the stewards are said to have made the statement objected to. There is no evidence of any admissions by Rowan. The answer, which could not reasonably have been expected from the question, was not only hearsay, but was sufficiently important to have influenced the verdict, and should have been stricken out. The question of title was being tried in court, not by stewards at a race track. It was reversible error.

The second exception was to testimony as to selling races, and the meaning of the sale price fixed on horses, and the procedure followed. A day or two before Rowan bought the horse, as he testified, for $2,100, it had a price of $1,500, which had to be paid before the race was run, and the evidence was offered either to discredit Rowan or show the value. We see no impropriety in either view.

For the reasons here assigned, the judgment will be reversed and new trial awarded.

*Judgment reversed, with costs to the appellants, and case remanded for new trial.*