[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an application for a Prejudgment Remedy seeking a garnishment of a debt owed by the plaintiffs to the defendants under Conn. Gen. Stats. § 52-329, subject to provision of §§ 52-278a
to 52-278g inclusive.
On July 1, 1994, the plaintiffs, Richard and Harriet DeMato, filed a four-count complaint against the defendants, Decorator Telephone, Inc. (Decorator) and Paul Brown, and brought an application for a prejudgment remedy against the defendant, Decorator. The plaintiffs seek to garnishee their own debt to the defendants, pursuant to Conn. Gen. Stats. § 52-329, of $300,000 of the proceeds of a note, dated November 19, 1992, payable by the plaintiffs to Decorator. The first count of the complaint sounds in breach of contract against Decorator; the second count alleges fraud against both defendants; count three sounds in CUTPA against both defendants; and count four alleges negligent misrepresentation by Decorator. On July 27, 1994, the plaintiffs filed an amendment to their application to increase the amount garnished to $550,000 of the proceeds of the note.
The application seeks to garnishee the amount of $550,000 of a $650,000 note secured by a mortgage on the property sold to the plaintiffs by Decorator. The note was due prior to the date of the application.
The plaintiffs further seek to have the court order that the monies ordered garnished be deposited in an escrow account, pending the final outcome of their complaint; that the plaintiffs would pay the difference due to the defendants; and that no further interest would be due. In essence, the plaintiffs seek the court to rewrite the terms of the promissory note. The plaintiffs further seek this court to order a release of the mortgage securing the payment of the note pending the resolution of this case. The plaintiffs further seek that a receiver be appointed to retain the monies ordered to be garnished.
A review of the complaint shows that: On August 19, 1992, the plaintiffs and Decorator entered into a contract of sale of Rogers CT Page 10699 Island. The contract (Exhibit A) contained provisions which represented that the house existing on the island had a septic system, and that septic system conformed to all federal, state, and local regulation. The house in fact had no septic system, but discharged directly into Long Island Sound. The plaintiffs claim damages as a result for the installation of a new septic system in the amount of $321,666. The sale price of the property totalled $2,650,000.
"Section 52-278d permits a court to grant a prejudgment remedy if `the plaintiff has shown probable cause to sustain the validity of his claim. . . .' Prejudgment remedy proceedings do not address the merits of the action; they concern only `whether and to what extent the plaintiff is entitled to have property of the defendant held in the custody of the law pending adjudication of the merits of that action.'" (Citation omitted.) Tyler v. Schnabel, 34 Conn. App. 216,219, ___ A.2d ___ (1994). "`In acting on a prejudgment remedy motion, the trial court must evaluate the arguments and evidence produced by both parties to determine whether there is probable cause to sustain the validity of the plaintiff's claim. . . . [T]he trial court vested with broad discretion, need determine only the likely success of the plaintiff's claim by weighing the probabilities.'" Id. "Civil probable cause constitutes a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a person of ordinary caution, prudence and judgment, under the circumstances, in advancing the action. `The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim.'" (Citation omitted.) Id. 219-20.
The plaintiffs argue and they testified that they relied upon the defendant's representations in the contract, as well as the listing, and now that the estimated cost of installing a septic system is $321,666.00. The plaintiffs also maintain that the testimony given by Leroy Murray and Mark Lidsky show that the sewage disposal system consisted solely of a single pipe leading into Long Island Sound. However, the plaintiffs' own expert, Anthony DaRos, testified before the sale that he mistakenly believed that a sewage disposal system existed and he advised the plaintiffs it would cost $10,000 to repair. The plaintiffs presented the testimony of Dennis Johnson, the Director of East Shore District Health, that the State of Connecticut had been, previous to the sale, trying to determine whether the sewage discharged directly into the sound, through the use of dye tests, and that the defendant had notice of these tests. The plaintiffs CT Page 10700 introduced the blue prints submitted to the East Shore District Health that demonstrate that the main house had no existing sewage system. The print is dated "Received April 13 1989 E.S.D.H.D." (See Exhibit Y), more than three years before the contract of sale.
Decorator argues that the plaintiffs had the island inspected by twelve different inspectors, one of whom, Anthony DaRos, reported to the plaintiffs that the septic system of the main house was not functioning, but could be repaired for $10,000. Decorator maintains that despite this knowledge the plaintiffs chose not to withdraw from the contract within the time provided for inspections and withdrawal. Furthermore, Decorator contends that the plaintiffs claimed to have discovered the lack of a septic system eighteen months after the purchase of the property, shortly after the purchase money mortgage became due, and that those engaged to look for the septic system were not licensed installers or cleaners of septic systems. Moreover, Decorator argues that Paul Christopherson, the island groundskeeper, walked the island three times per day and never noticed any discharge into the sound, and that he did not block, or see anyone else block the sewage pipe. Decorator also maintains that it had no knowledge of a blocked pipe, never performed any maintenance on the sewage system, nor had it pumped out.
The plaintiffs seek to garnish the proceeds of the note pursuant to Conn. Gen. Stats. § 52-329, which provides in pertinent part that,
 "when a debt . . . is due from any person to such defendant . . . the plaintiff may insert in his writ . . . a direction to the officer to leave a true and attested copy thereof and of the accompanying complaint, at least twelve days before the return day, with such . . . debtor . . ., or at the usual place of abode of such garnishee; and from the time of leaving such copy all the effects of the defendant in the hands of any such garnishee, and any debt due from any such garnishee to the defendant, . . . not exempt from execution, shall be secured in the hands of such garnishee to pay such judgment as the plaintiff may recover."
Although one Connecticut Supreme Court has raised the question CT Page 10701 of whether a plaintiff may garnish a debt owed by himself to the defendant, "it has never been held in this State that a plaintiff may factorize himself in his own suit." Wright v. Wright, 93 Conn. 296,298, 105 A. 684 (1919); see also, Beach v. Fairbanks, 52 Conn. 167,172 (1884). The plaintiffs cite that in Norco Realty Corp. v.Margulies, 21 Conn. Sup. 357 (Super.Ct. 1959) which noted that Conn. Gen. Stats. § 52-329 "authorizes a garnishment when a debt is due from `any person' to the defendant." Id., 358. That court further stated that the decision in Beach was "tantamount to permitting it. . . ." Id. That court held that "garnishment made by plaintiff is not invalid for the reason that plaintiff is its own debtor. . . ." Id., 359.
The plaintiffs also cite other jurisdictions in which a plaintiff is permitted to garnish his own debt, however, these decisions either do not detail any rationale for their rulings, or rest on statutory authority. See Rowan v. State, to Use of Grove,172 Md. 190, 191 A. 244 (1937); Pasquinelli v. Southern MacaroniManufacturing Co., 272 Pa. 468, 116 A. 372 (1922); Valley ButterCo. v. Minnesota Co-Op Creameries Assn., 300 Pa. 102, 150 A. 157
(1930); Land Title Trust Co. v. Homer Building Loan Assn.,138 Pa. Super. 563, 10 A.2d 786 (1940).
There is, however, a divergence of authority. See 31 A.L.R. 711, 61 A.L.R. 1458. "The decisions, with very few exceptions, that permit a plaintiff to garnishee himself, find recognition and support thereof in their respective statutes." First InternationalBank v. Brehmer, 215 N.W. 918, 919 (N. Dak., 1927). The court noted that "`the better considered cases, and, seemingly, the weight of authority, is to the contrary.'" Id., 920. "`The very purpose of a garnishment proceeding is to reach money, goods, chattels, and choses in action in the hands of a third person.'" Id. "`On principle, it will readily occur to almost anyone that to allow a plaintiff in attachment to garnishee himself as debtor to his creditor, whom he made a defendant for that purpose, is a distortion of the process of garnishment from its ordinary uses . . .'" Id.
The plaintiff argues that Conn. Gen. Stats. § 52-329 allows attachment of a debt due from "any person", and therefore, must include any debt owed by the plaintiff. The court in Gerber v.Ogle Coal Co., 218 N.W. 361 (Wisc., 1928), interpreting an Indiana statute, stated, however, that "[w]hile the language of the statute is `any person' and therefore broad enough to include a plaintiff, from other provisions of the statute . . . relating to the liability of CT Page 10702 the garnishee and the right of attaching creditors to examine the garnishee defendant, it seems quite clear that it was not the purpose and intent of the [l]egislature . . . to authorize a plaintiff in an action to summon himself as garnishee. Id., 365. Similarly, in Conn. Gen. Stats. §§ 52-330 — 52-339 provide for citing the garnishee, disclosure by the garnishee, liability of the garnishee for not appearing, and service of garnishee process; all of which appear to contemplate a garnishee as a third person. "A garnishee should be an innocent person owing money or having in his possession property of the defendant, and is supposed to be indifferent as to who should have the money or property." Wood v.Bangs, 271 N.W. 447, 448 (Minn., 1937). Furthermore, "the garnishee should be considered a stakeholder, and that being such he is precluded from being a plaintiff." Emery v. C.D. Beck,22 S.E.2d 458, 460 (W.Va., 1942). "`The terms of . . . statutes vary, of course; but the decisions pro and con are usually based upon general considerations. The rule against allowing a plaintiff to make himself garnishee is based upon the lack of necessity for resort to garnishment and the inaptitude in such cases, and upon the adversary character of the proceedings against the garnishee.'"Morrison v. Morrison, 287 S.W. 792, 793 (Mo., 1926).
There is no necessity for a plaintiff to resort to the protections of Conn. Gen. Stats. § 52-329 when the debt sought to be garnished is within the plaintiff's own hands, since possession offers as much or more security to the plaintiffs than that provided under Conn. Gen. Stats. § 52-329. While the court in Norco
allowed a plaintiff to garnish his own debt, the court did not expound upon the basis of its decision.
The instant application and the various conditions of the garnishment sought would in effect enjoin the defendant from seeking any of the remedies allowed by law upon a default of payment of a note. The court cannot rewrite the terms of the note. Any redress sought from payment of the note are still available to the plaintiffs who again are already in possession of the monies sought to be garnisheed.
Accordingly, the prejudgment remedy is denied because the remedy sought is outside the scope of the statute
Conn. Gen. Stats. § 52-329 contemplates the garnishee as a third person and does not contemplate a plaintiff garnishing his own debt. CT Page 10703
Frank S. Meadow State Trial Referee