# ARTHUR G. DEIBERT *v.* STATE OF MARYLAND.

*Banks and Banking—Garnishment—Criminal Law—False Pretenses—Untrue Statement to Bank—Cashing of Check—Evidence—Quashing of Indictment.*

A check does not operate as an assignment of any of the funds to the credit of the drawer, if not certified.　　　　p. 690

As every bank has a full and general authority to part with money on general deposit to the credit of its depositor, any money paid out by the bank to the drawee of a check becomes the property of the recipient, who thereby, in the contemplation of the criminal law, acquires possession of the money and its immediate and absolute ownership.　　　　p. 691

The plaintiff in garnishment proceedings may be the garnishee.　　　　p. 691

The inchoate lien acquired under an attachment on money on deposit in a bank attached from the time of the service of the attachment and the laying of it in the hands of the bank as garnishee.　　　　p. 691

The deprivation of one's whole indefeasible interest in the subject matter is sufficient for the offense of false pretenses, as full ownership is not essential and the right may be no greater than that of a bailee.　　　　p. 691

On a prosecution for obtaining money by false pretenses, under allegations that defendant falsely stated, in order to secure the cashing of a check drawn by a corporation on a bank to his order, that the check did not represent dividends due his brother as stockholder in such corporation, the funds of which corporation were on deposit with the bank, and the brother's interest in which had been attached by the bank, evidence identifying the parties to the attachment proceedings, and the record thereof, were admissible, this tending to establish the status of the parties and of the property attached at the time of the commission of the crime.　　　　p. 692

*Decided June 10th, 1926.*

The corporate records of the corporation, showing that it was in course of liquidation, and that defendant's brother owned stock therein on which he was entitled to a dividend representing a partial distribution of assets, were also admissible, to establish the falsity of defendant's representation.          pp. 692, 693

Testimony as to the brother's debt to the bank, and as to the collateral pledged therefor, was admissible, as bearing on the bank's intention in parting with the money, and disclosing part of the circumstances under which it did so.          p. 693

The question of the admissibility of testimony cannot be raised after it has been received without objection.          p. 693

Accused, having failed to cross-examine a witness for the State on a certain point, cannot, on himself calling the witness to the stand, examine him on this point.          p. 693

On a prosecution for securing money by false pretenses from a bank, in order thereby to defeat a claim by the bank against the brother of accused, evidence as to the subsequent sale by the bank of collateral securing the claim was inadmissible, since the crime would remain even if the bank's loss were made good.
pp. 693, 694

The refusal to allow a question asked a witness to be answered is not prejudicial if it is afterwards answered by the witness without objection.          p. 694

The refusal of a motion to quash the indictment cannot be considered on appeal if the motion does not set out any defects in the indictment nor the facts upon which the traverser relied, and these facts are not disclosed in the record by an agreed statement or by a finding of fact.          p. 695

An indictment cannot be quashed because of a variance in the proof.          p. 695

In a criminal case, the legal sufficiency of the testimony to sustain the indictment cannot be submitted to the court as a question of law, the jury being, under the Constitution, judge both of the law and the legal effect and legal sufficiency of the evidence, the admissibility of which is alone for the court.
p. 695

*Decided June 10th, 1926.*

Appeal from the Circuit Court for Harford County (HAR-LAN, J.).

Criminal proceeding against Arthur G. Deibert. From a judgment of conviction, defendant appeals. Affirmed.

The cause was submitted on briefs to BOND, C. J., PATTI-SON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Omar D. Crothers* and *Millard E. Tydings,* for the appellant.

*Thomas H. Robinson, Attorney General, John Hubner Rice, Assistant Attorney General,* and *W. Worthington Hopkins, State's Attorney for Harford County,* for the State.

PARKE, J., delivered the opinion of the Court.

The appellant, Arthur G. Deibert, was convicted of obtaining money by false pretense, and his appeal presents eleven exceptions on the evidence, and an exception to the refusal to quash the indictment. The traverser was indicted under section 139 of article 27 of Bagby's Code, which declares that "any person who shall by any false pretense obtain from any other person any chattel, money or valuable security, with intent to defraud any person of the same, shall be guilty of a misdemeanor * * * provided also, that a mere promise for future payment, though not intended to be performed, shall not be sufficient to authorize a conviction under this section." There is no promise for future payment involved in the crime of which the accused was found guilty, and, therefore, proof of the crime charged involved the establishment that the thing was a chattel, money, or valuable security, wherein the immediate and whole indefeasible interest and actual possession was obtained by a false pretense.

In the first place, the thing or subject matter was money, which was within the letter and spirit of the statute. The money was obtained by the traverser from the First National

Bank of Havre de Grace on September 2nd, 1924, upon a check for three thousand five hundred and sixty dollars, dated August 30th, 1924, and drawn by the Elkton Development Company to the order of the traverser.

The Elkton Development Company was in course of liquidation, and the proceeds of sale of its principal assets were on deposit with the First National Bank of Havre de Grace. The directors and stockholders had followed the indicated statutory course to obtain a dissolution of the corporation and, pending the accomplishment of this purpose, the corporation decided on August 29th, 1924, to distribute at once the sum of forty dollars a share to the stockholders of record on that date. This division of the assets of the company was to be accomplished by checks drawn to the order of each of the stockholders.

Clarence Deibert held eighty-seven shares of the stock of the company, and consequently he was entitled to receive under this preliminary division of the assets three thousand, four hundred and eighty dollars, and this sum was contained in the check mentioned of three thousand, five hundred and sixty dollars, which was eighty dollars in excess of what was due him on account of his shares of stock. Clarence Deibert was the treasurer of the company, and the traverser was its secretary. Instead of drawing, as directed by the resolution of the corporation, the check for three thousand, four hundred and eighty dollars to himself, by virtue of his right as stockholder, Clarence Deibert, as treasurer, wrote the corporate check for three thousand, five hundred and sixty dollars and made it payable to his brother, Arthur G. Deibert, without any consideration moving from the payee to the corporation, and then mailed the check to the traverser, who received it on August 30th, 1924. This check did not operate as an assignment of any of the funds to the credit of the company, as the check was not certified, and when presented by the holder on September 2nd, the bank declined to pay it, until induced by the misrepresentations of the traverser. Code, art. 13, sec. 208; *Moses v. Franklin Bank*, 34 Md. 574, 581, 582;

*Exchange Bank v. Sutton,* 78 Md. 577, 585; *Hodge and Mc-Lane on Attachment,* sec. 151, n. 3.

Clarence Deibert, however, was indebted to the First National Bank of Havre de Grace in the sum of four thousand and forty dollars, on a demand note for which certain stocks were pledged as collateral security and the bank caused an attachment to be laid on August 30th, 1924, in the hands of the First National Bank of Havre de Grace, attaching all the rights and credits of Clarence Deibert, and particularly the interest of Clarence Deibert in the bank deposit with the garnishee to the credit of the Elkton Development Company.

As every bank has a full and general authority to part with money on general deposit to the credit of its depositor, any money paid out by the bank becomes the property of the recipient, who thereby, in the contemplation of the criminal law, acquired possession of the money and its immediate and absolute ownership.   (a) The fact that the bank is the plaintiff does not prevent it being also the garnishee (b); and the inchoate lien acquired under an attachment on the money on deposit attached in the hands of the bank as garnishee from the time of the service of the attachment and the laying of it in its hands (c).   The deprivation of the garnishee's whole indefeasible interest in the subject matter is sufficient for the offense of false pretenses, as full ownership is not essential and the right may be no greater than that of a bailee.   (d) *State v. Samaha,* 92 N. J. L. 125; *Reg. v. Martin,* 8 Ad. & E.,* at pp. 485, 488; *Reg. v. Dent,* 1 C. & R. 249.   (c) *Hodge and McLane on Attachment,* secs. 107, 155, 127.   (b) *Hodge and McLane on Attachment,* sec. 75; *Owens v. Crow,* 62 Md. 498; *Albert v. Albert,* 78 Md. 338; Code, art. 9, sec. 10. (a) *Reg. v. Prince,* L. R. 1 C. C. R. 150; *Cooke v. Cooke,* 43 Md. 522; *Main v. Lynch,* 54 Md. 658; *May v. Lumber Co.,* 70 Md. 448; *Buschman v. Hanna,* 72 Md. 6.

In addition to the inchoate lien of the attachment, the bank held as part of collateral security for its loan to Clarence Deibert thirty shares of the stock of the Elkton Development Company.   These shares had been assigned to the bank, but had not been transferred to the assignee on the books of

the company at the time the distribution of forty dollars a share was made. It was under these circumstances that the traverser presented on September 2nd, 1924, to the bank for payment the check in question. The State offered evidence tending to establish that the bank refused to honor the check because of the attachment of all the interest of Clarence Deibert in the deposit in the bank to the credit of the Elkton Development Company, but was deceived by the traverser, who, in order to defraud the bank, with the knowledge of the untruth and for the purpose of procuring from the bank in money the amount of the share of the assets of the company payable to Clarence Deibert and contained in the check then presented for payment, falsely stated to the bank as a fact that the check was not for any dividend or moneys due from the company to Clarence Deibert, but was solely for the indebtedness of the company to the traverser; and that thereupon the bank, believing the untruth, and being induced thereby, gave the full amount of the check to the traverser.

The accused offered evidence tending to refute the testimony against him, but the statement of the case has been made from the viewpoint of the State, as the errors assigned arise in connection with the proof produced against the traverser, and their consideration required a presentation of the State's case.

The first and second exceptions were to the identification of the parties to the attachment proceedings and the admission of the record in evidence. There can be no question of the materiality and relevancy of this proof, which tended to establish the status of the parties and of the property attached at the time of the commission of the crime charged. And the third exception was to the introduction of the corporate records of the Elkton Development Company to show that its property had been sold, its affairs in the course of liquidation, and its dissolution authorized; and further that Clarence Deibert was the owner of record of eighty-seven shares of its stock on which the company had authorized, shortly before the attachment, a preliminary distribution of its assets

to the stockholders at the rate of forty dollars a share. The lower court rightly admitted this testimony, which was admissible to establish the falsity of the representation by which the money was procured.

The first bill of exception does not properly present an exception for the consideration of this Court. The witness, William N. Coale, had testified, without objection, in reference to the amount of the indebtedness of Clarence Deibert to the bank, and to the value of the collateral pledged for this indebtedness, so it was too late to raise the question of the admissibility of this testimony after it had been received without objection. *Klecka v. State,* 149 Md. 128. The testimony itself had some evidential value of the intention of the bank in parting with the money, and it was a disclosure of a part of the circumstances under which the check was paid and from which, with all the other accompanying facts, the jury might infer that the bank divested itself of its title to the property upon the strength of the false representation. It follows that if the admission of the testimony had been duly excepted to, there would have been no error in its reception.

The eleventh exception may be considered at this point, as this exception is to the refusal of the lower court to permit the traverser to ask this witness, when called to the stand by the accused, what was the worth of the same collateral. The witness had testified in chief on this very point, and had stated that all of the collateral was worthless, except the thirty shares of the Elkton Improvement Company, whose value he gave. The appellant had before had the witness on cross-examination and should have then probed his testimony on this point. His failure did not give him the right to call the witness to the stand again for what was, in effect, a belated cross-examination.

The witness was also asked, when thus called by the traverser, if the collateral securities mentioned had ever been sold by the bank. The declination of the *nisi prius* court to permit this question to be answered constitutes the

twelfth exception. In so refusing there was no error. The securities had not been sold at the time of the commission of the crime, and whatever was afterwards done by the bank with the securities was beside any question before the trial court. If the bank's loss had been made good, the crime would remain. *Commonwealth v. Brown*, 167 Mass. 144; *Commonwealth v. Coe*, 115 Mass. 481, 502, 503.

The fifth, sixth and seventh bills of exceptions are so indefinite and confused in form that it is difficult to ascertain the rulings which are presented for review. But as all the material evidence which may have been excluded by the court's action on these exceptions seems to have been substantially introduced, without objection, in other parts of the witness' testimony, there would be no reversible error presented by these exceptions. *Infra.*

After Charles B. Silver, the president of the bank, had testified in chief to the representations made by the traverser to the bank, he was taken in cross-examination by the appellant. In the course of this examination, the witness said that he had thought the statement of the traverser was true, and when the inquiry was made if it were true his reply was "It appears not," and then the court refused to let him answer the next question "How does it appear that it was not true?" The further interrogatory "What representation do you claim that Mr. Arthur G. Deibert made that was false and induced your bank to part with the bank's property?" was not suffered by the court. These two rulings constitute the eighth and ninth exceptions. There was no prejudicial error in either of these rulings, as, without objection, the witness later answered the second question; and the first by explaining that while he had no personal knowledge of the falsity of the representations by the traverser, his information to that effect was derived from third parties and later developments.

At the close of the State's case, the traverser moved the court to quash the indictment, and the court's refusal was the occasion of the tenth exception, which raises the final

question for disposition. The motion to quash does not set out any defects in the indictment nor the facts upon which the traverser relied, and as these facts are not disclosed in the record by an agreed statement or by a finding of fact, the motion cannot be considered. *Hamilton v. State,* 127 Md. 312, 313, 314; *State v. Williams,* 85 Md. 231. The informality of the motion does not deny to the appellant the consideration in this appeal of any question which it sought to present, because the motion was not based upon any defect of form or procedure with respect to the indictment, but, according to appellant's brief, "the motion obviously rested upon the insufficiency of the proof as a matter of law to sustain the indictment and the variance of the proof from the facts and offense charged in the indictment." It is plain an indictment can not be quashed because of a variance in the proof offered in the trial of the offender. The rules of evidence and of practice afford ample means to the traverser to prevent the jury considering testimony inadmissible for variance or upon any other ground, but a motion to quash the indictment is not an appropriate method. Nor can the legal sufficiency of the testimony to sustain the indictment be submitted to the trial court as a question of law, as under the constitution of Maryland the jury, in criminal cases, is the judge of both the law and the legal effect and legal sufficiency of the evidence, whose admissibility alone is for the trial court. *Jessup v. State,* 117 Md. 119, 123; *Dick v. State,* 107 Md. 17; *Foxwell v. State,* 146 Md. 90, 94; *Bloomer v. State,* 48 Md. 538; *Ridgely & Melvin v. State,* 75 Md. 512; *Garland v. State,* 112 Md. 98-100; *Luery v. State,* 116 Md. 294.

*Judgment affirmed, with costs.*