943 A.2d 615

**Robert Lee MYER**

v.

**STATE of Maryland.**

**No. 15, Sept. Term, 2007.**

Court of Appeals of Maryland.

March 10, 2008.

464

Cynthia E. Young, Annapolis, MD, for Petitioner/Cross–Respondent.

Edward J. Kelley, Assistant Attorney General, (Douglas F. Gansler, Attorney General of Maryland, Baltimore, MD), on brief, for Respondent/Cross–Petitioner.

Argued Before: BELL, C.J., and RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, specially assigned) and DALE R. CATHELL, (Retired, specially assigned), JJ.

RAKER, J.

In this criminal case involving sexual abuse to a minor, we must decide if the trial court abused its discretion when it did not allow the defendant to recall the child-witness for additional cross-examination after the court admitted into evidence a videotaped interview between a social worker and the child-witness after the child-witness had testified. We shall hold that the trial court abused its discretion in denying petitioner the opportunity to cross-examine the child-witness after the video-tape had been admitted into evidence.

## I.

Robert Lee Myer, petitioner, was indicted in the Circuit Court for Baltimore County for sexual abuse of a minor and various other sexual offenses. He waived his right to a jury

and proceeded to trial before the court. He was convicted of the offenses of sexual abuse of a minor, third degree sexual offense, fourth degree sexual offense and second degree assault.

Petitioner's convictions stem from events that occurred on or about November 19 and 20th, 2004. H.C., then three years old, was staying with petitioner and his wife, Ethel Myer, at their house overnight on November 19th. When H.C.'s mother, Kelly C., picked her up the next morning, H.C. told her that Petitioner had been "bad" and indicated that he had touched her vagina. Kelly C., along with her husband David C., took H.C. to the police station in Cockeysville. Two days later, a licensed social worker at the Child Advocacy Center, Nelwyn Henry, interviewed H.C. The interview was videotaped. Petitioner was indicted by the Grand Jury for Baltimore County, and proceeded to trial in the Circuit Court.

Petitioner filed an "omnibus motion," raising, *inter alia,* the competency of the child. At the hearing on the motion, he argued that H.C., a child of four years and nine months of age, was not a competent witness. He raised concerns as to her ability to recollect, her ability to differentiate between the truth and a lie, and impermissible coaching. As to the admissibility of a videotape made during the social worker's interview of the young child, counsel explained as follows:

> "We also believe that as part of the competency proceeding, it is important for the Court to weigh what the child says today as opposed to what she was saying a year ago in that tape and how she was saying it. And, so, we've asked the Court to review the tape for that limited ground, but we reserve the right to object to it if the State tries to bring [it] in as substantive evidence."

The Court found H.C. competent to testify.

From the outset, petitioner objected strenuously to the admissibility of the videotape. Before the trial commenced, petitioner told the court that he objected to the tape. He stated as follows:

"Your Honor, there is the argument regarding the tape. But [I'd] like to reserve on that. I want to see what the State's going to do. For all I know, they may or may not admit it, so I—we'll just wait. I'd be pleased to wait for that to get things going."

Petitioner moved *in limine* to exclude the testimony of the social worker as well as the videotape of the social worker's interview of H.C. His objection was twofold: that it was unreliable, and that it violated his constitutional right of confrontation. He maintained that the interview and the tape were hearsay, that the evidence was testimonial in nature, and it was therefore inadmissible based upon *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and *Lawson v. State,* 389 Md. 570, 886 A.2d 876 (2005).

The State's position was that the social worker would be called only to lay the evidentiary foundation for the tape's admission, that the tape was not testimonial evidence and therefore it was admissible evidence. The trial court reserved ruling as to the admissibility.

H.C. testified as the State's first witness. She testified that she was on the bed with Myer while her Aunt Ethel was taking a shower. She testified that Myer touched his fingers to his lips and then to her vaginal area, on the inside of her underwear. After the State concluded its direct examination, defense counsel declined to cross-examine H.C.

The court heard testimony from several other witnesses, including H.C.'s parents, Ethel Myer, expert witnesses interpreting forensic evidence recovered from H.C.'s underwear, and Ms. Henry, the social worker. Defense counsel maintained that the social worker should not be permitted to testify at all, and objected. Ms. Henry testified about the interview she conducted with H.C., explaining to the court the protocol she uses when she conducts a "forensic interview" with a child to determine whether abuse has occurred.

On cross-examination, defense counsel elicited the facts as to how the police became involved in the case and their involvement in the interview with H.C. The interview room contained a camera to videotape the interview and the police

could watch the interview from an adjoining room. There was a phone in the room and Ms. Henry structured the interview so there would be an opportunity at the end of the interview for a police observer to call with any questions he would like to ask the victim.

The State waited until the end of its case-in-chief to formally offer the video-tape into evidence. Defense counsel objected again to the tape's admissibility on constitutional grounds and lack of reliability and particularized guarantees of trustworthiness. The following colloquy occurred:

"[DEFENSE COUNSEL]: ... Also, if the Court decides it wanted to admit the tape for those substantive reasons, I would like to reserve the right to at least—I'm going to consider cross-examining [H.C.] on portion of the tape, if it comes in.

"THE COURT: Well, it would have been better, even if it were beyond the scope of the State's direct, to question the child about whatever matters needed to be addressed while she was here.

"[DEFENSE COUNSEL]: Well, you know, Your Honor, I made a tactical decision, along with my client, based on what [H.C.] had to say and what I felt was best for this case for him not to cross-examine based on her testimony.

"THE COURT: Hmm.

"[DEFENSE COUNSEL]: Now, introducing some other testimony, or at least you're being requested to put in some other testimony of [H.C.], and, and I think I have the right to cross-examine her on that. However, it may very well be that the State and I can stipulate to what are really, I think, only two to three points in that tape that I would ask [H.C.] about. I, I am not and I do not want to inconvenience that child or have her get on the stand again, if I can help it...."

The court reserved ruling on the matter.

The next day, petitioner called Michael Spodak, M.D.[1] as an expert in the field of forensic psychiatry to testify that, in his

---

1. The State and the defense stipulated that Dr. Spodak was an expert in the field of forensic psychiatry.

opinion, because the methods used in conducting the interview were suggestive, the interview was unreliable. Defense counsel again objected to the admissibility of the tape, based on lack of genuineness and trustworthiness, and *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177. Without conceding the tape's admissibility, counsel reiterated to the court that if the tape was received into evidence, counsel wanted to cross-examine the child. Counsel argued to the court as follows:

> "By the way, I think from my argument yesterday, I think the Court already understands that I disagree with the State when they said in their argument, I've already had my chance to cross-examine [H.C.]. I certainly had my chance to cross-examine [H.C.] based on her testimony. I've never had a chance to cross-examine [H.C.] with the information that's on this tape that has not been in evidence and is only now decided by the court, whether or not to admit."

The State argued that the tape possessed particularized guarantee of trustworthiness and that it was admissible pursuant to § 11–304 of the Criminal Procedure Article, Md.Code (2001, 2006 Cum.Supp.).[2]

The court ruled that the videotape had particularized guarantees of trustworthiness pursuant to § 11–304(e) and was admissible, concluding as follows:

---

**2.** Unless otherwise noted, all subsequent statutory references herein will be to the Criminal Procedure Article of Md.Code (2001, 2006 Cum.Supp.). As pointed out by the State, § 11–304 provides for the admissibility of ex-parte out-of-court statements made by alleged child victims. Assuming proper notice is given to the defense, the statute allows the trial court in a criminal case to admit into evidence, to prove the truth of the matter asserted, an out-of-court statement of a child under the age of twelve who is the alleged victim of child abuse or certain sexual offenses, regardless of whether the child testifies at trial or not. The statement must have been made to statutorily identified persons acting lawfully in the course of their profession when the statement was made, and the court must find that the statement possesses particularized guarantees of trustworthiness. If the child victim does not testify, the child's out-of-court statement must be corroborated. In addition, the statement cannot be admissible under any other hearsay exception.

"I've considered all of the factors under Criminal Procedure Section 11–304; I've considered the testimony, also, of Dr. Spodak and the arguments of respective Counsel, and I'm satisfied that the statement given by [H.C.] to Miss Henry does have the particularized guarantees of trustworthiness. It was given to Miss Henry as she was acting in the course of her profession as a licensed clinical social worker, interviewing the child and, therefore, I do find that the tape should be admitted into evidence."

Following a stipulation by the parties as to the testimony of an unavailable police officer, the State rested.

Petitioner renewed his request to recall H.C. for cross-examination. The following discussion took place:

"[DEFENSE COUNSEL]: Your Honor, there's still the question about, with respect to the tape, the cross-examination of [H.C.]."

"THE COURT: [H.C.] was here, and there was an opportunity to cross-examine her on competency and then as to the merits of the case. That would have been the time to question her regarding the tape. I don't know what questions you would have asked her with respect to the tape. The interview took place back in November of 2004.

"[DEFENSE COUNSEL]: Well, Your Honor, I can certainly make a proffer to you. But I, I've already made the argument yesterday. I'll make—excuse me—Friday, I'll make it again."

"At the time the client pros- to cross-examine [H.C.] was based on the testimony that she had given. The tape was not into evidence at that time. Tape is in evidence now. And I believe the confrontation clause argument gives me the right to cross-examine her on the contents of the tape which, in some cases, is different than what she testified to on the stand. It's not identical. And I've already made the Court aware of some of the areas, you know, with respect to Aunt Ethel being in the bed which is, I would suggest to the Court, a huge difference in, with respect to what she's testified to. And it goes to her credibility. Not whether

she's lying or not, but whether she has memory of the incident and how she's reporting it.

"And, so, there, there are things that are said on the tape that aren't said during testimony before you, and those are the things that I would ask her about. And, so, I ask for permission to do that.

"THE COURT: Well, you have trial strategy, and it may be a decision to ask the witness about a prior inconsistent statement, or it may be a decision to simply point out the differences between testimony here at trial and statement given at the time that she spoke with Miss Henry back in November of 2004. But there was certainly an opportunity to conduct cross-examination."

The State opposed recalling H.C. for further cross-examination, arguing that the State had given the defense notice of intent to use the statement pursuant to § 11–304(d)(3).[3] Defense counsel pointed out that "things that are said in that tape, once again, that aren't said in [H.C.'s] direct. If there weren't those differences, I think that the State would have a good point." The court did not permit H.C. to be recalled for cross-examination, stating: "I don't see the reason for that in light of the opportunity for cross-examination that's already been given." The court found petitioner guilty and sentenced him to a term of incarceration.

Petitioner noted a timely appeal to the Court of Special Appeals. Before that court, petitioner argued that the trial court violated his Sixth Amendment right of confrontation, based on *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177. He further argued that his rights to cross-examination and due process were violated when he was not allowed to recall H.C. for cross-examination after the tape was admitted. The Court of Special Appeals agreed with Myers that the recorded statement was "testimonial" in nature as

---

**3.** The parties had an extended discussion and disagreement about whether the notice provided by the State to the defense indicated that the State might offer the videotape in addition to Ms. Henry's testimony or that the State would only offer Ms. Henry's testimony.

that term has been used by the Supreme Court in *Crawford v. Washington* but found that the Confrontation Clause of the Sixth Amendment was not offended. In an unreported opinion, the Court of Special Appeals held that even though the statements made on the videotape were testimonial in nature, the Confrontation Clause was not offended because Myer had the opportunity to cross-examine H.C. before the tape was admitted. The intermediate appellate court reasoned as follows:

> "In the case at bar, because the State complied with its obligation to disclose the existence of the victim's recorded statement, it is of no consequence that appellants's trial counsel made a strategic decision to forego cross-examination of the victim. Because the victim actually testified during the State's case-in-chief, she was 'subject to cross-examination concerning the [recorded] statement.' The Confrontation Clause, which provides criminal defendants with the opportunity to cross-examine prosecution witnesses, does not require that a witness be 'recalled' as an essential condition precedent to the introduction of that witness's otherwise admissible prior statement."

We granted certiorari to answer the following question: [4]

> "Did the trial court violate Petitioner's Sixth Amendment rights under *Crawford v. Washington* and his fundamental

---

**4.** We granted the State's conditional cross-petition to answer the following questions:

> "Did the Court of Special Appeals properly hold that the trial court's ruling allowing admission of videotaped evidence did not violate the Supreme Court's holding in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)?

> "Did the Court of Special Appeals properly recognize that Myer did not have a due process right to re-call the child victim for the purposes of cross-examination where the child victim had testified previously in the case and Myer opted not to cross-examine her?"

The State presented two arguments to support the cross-petition. The State argues that petitioner did not preserve the *Crawford* argument for appellate review. Second, the State argues that the videotape was not testimonial under *Crawford* because the interview with the social worker had the primary purpose of determining whether abuse had occurred and whether any action was needed to protect H.C.'s health and safety.

right to cross-examine witnesses against him when it allowed the State to introduce taped testimonial hearsay at the close of its case and refused to permit defense counsel to cross-examine the declarant-victim on the additional testimony?"

*Myer v. State,* 399 Md. 33, 922 A.2d 573 (2007).

## II.

Before this Court, petitioner argues that the statements on the tape are testimonial hearsay under *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, and its progeny. Petitioner argues that the interview and tapes are testimonial evidence because during the interview, a police officer was watching through a two-way mirror and the officer asked a question, by telephone, at the end of the interview. Petitioner asserts that he was never given a prior opportunity to cross-examine H.C. about the videotape because the tape was not yet in evidence when the State called H.C. as a witness and he was not allowed to recall H.C. after the tape was admitted into evidence. Finally, petitioner argues that the trial court committed prejudicial error under Maryland evidence law when it denied petitioner the opportunity to recall H.C. for cross-examination.

The State argues that petitioner declined to cross-examine H.C. when given the opportunity, and that *Crawford* was not offended because H.C. was available for cross-examination before the tape was admitted. The State characterizes the refusal of the trial court to recall H.C. for further cross-examination as a permissible exercise of the court's discretion.

## III.

■ We turn to petitioner's contention that the trial court committed prejudicial error when it denied his request to

---

We do not find it necessary to determine whether the admission of the video-tape was error under the Confrontation Clause of the Sixth and Fourteenth Amendments of the United States Constitution because we decide this case based on non-constitutional Maryland law.

recall the witness for cross-examination. This Court generally follows the principle that we will not reach a constitutional issue when a case can properly be disposed of on a non-constitutional ground. *See Smith v. State*, 399 Md. 565, 570 n. 4, 924 A.2d 1175, 1178 n. 4 (2007); *Dept. of Corrections v. Henderson*, 351 Md. 438, 451, 718 A.2d 1150, 1156 (1998); *Professional Nurses v. Dimensions*, 346 Md. 132, 138, 695 A.2d 158, 161 (1997); *State v. Lancaster*, 332 Md. 385, 404 n. 13, 631 A.2d 453, 463 n. 13 (1993).

■ A court's interest in properly disposing of a case on non-constitutional grounds is so strong as to constitute one of the few exceptions to the general rule that an issue must be raised in the petition for certiorari, cross-petition or Order of the Court. *See McCarter v. State*, 363 Md. 705, 713, 770 A.2d 195, 199 (2001); *Professional Nurses v. Dimensions*, 346 Md. at 138–139, 695 A.2d at 161 (1997) (stating "[t]he appellate policy of avoiding unnecessary decision of constitutional issues gives rise to one of 'a very limited number of circumstances [that] have been treated as extraordinary' and thus within the exceptions to the requirement that an issue be raised in a certiorari petition, cross-petition, or order by the Court.'") (internal citations omitted); *State v. Raithel*, 285 Md. 478, 484, 404 A.2d 264, 267 (1979).

In the instant case, the issue presented can be decided on Maryland evidentiary, non-constitutional grounds. We hold that the trial court's denial of Myer's request to recall the witness after the tape was admitted to be a violation of Maryland evidence law separate and apart from any rights Myer may have under the Sixth Amendment to the United States Constitution. *See Michigan v. Long*, 463 U.S. 1032, 1040, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983). Because we find that the Circuit Court abused its discretion in restricting petitioner's right of cross-examination, and the error was not harmless, we do not consider petitioner's constitutional argument as to the admissibility of the tape.

■ The trial court abused its discretion when it refused to recall the witness for purposes of cross-examination. The

trial court has discretion both in controlling the mode and order of interrogating witnesses and in controlling the scope of cross-examination. The trial court also abused its discretion because its refusal to recall the child-witness, under the unusual facts of this case, impermissibly limited petitioner's right of cross-examination.

 Trial courts are granted broad discretion under Md. Rule 5–611(a) to control the mode and order of the interrogation of witnesses and the parties' presentation of evidence. Subject to constitutional considerations, the same is true as to the scope and timing of cross-examination. The Rule provides, in pertinent part, as follows:

"(a) **Control by court.** The Court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

"(b) **Scope of cross-examination.** (1) Except as provided in subsection (b)(2), cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. Except for the cross-examination of an accused who testifies on a preliminary matter, the court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination...."

We review an exercise of this authority for abuse of discretion. *See Ware v. State,* 360 Md. 650, 684, 759 A.2d 764, 782 (2000) (noting that "trial judges have broad discretion in determining the order of presentation of evidence."). An abuse of discretion can occur when the trial judge's action "impair[s] the ability of the defendant to answer and otherwise receive a fair trial." *State v. Hepple,* 279 Md. 265, 270, 368 A.2d 445, 449 (1977).

 Cross-examination is a right guaranteed by the common law. *See, e.g., Crawford v. Washington,* 541 U.S. at 68, 124 S.Ct. at 1374 (holding that where testimonial evidence is at

issue, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross examination); *U.S. v. Gomez–Lemos,* 939 F.2d 326, 333 (6th Cir.1991) (describing "the ancient faith of the common law, incorporated by the founders in the Bill of Rights, that live confrontation and cross-examination of witnesses in the courtroom is the key to finding the truth in a criminal trial"); *State v. Bumper,* 275 N.C. 670, 170 S.E.2d 457, 460 (1969). The United States Supreme Court has recognized cross-examination as "the 'greatest legal engine ever invented for the discovery of truth.' " *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970) (quoting 5 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW, § 1367 (3d ed.1940)).

Cross-examination has many purposes. The questioner may intend to impeach a witness with a prior inconsistent statement, to show bias or interest of a witness, or to even bring out helpful information not included in the direct testimony. We have described the role of cross-examination as follows:

> "The real object of cross-examination is 'to elicit all the facts of any observation or transaction which has not been fully explained.' That a witness may be cross-examined on such matters and facts as are likely to affect his credibility, test his memory or knowledge or the like, is a fundamental concept in our system of jurisprudence. And cross-examination to impeach, diminish, or impair the credit of a witness is not confined to matters brought out on direct examination; it may include collateral matters not embraced in the direct examination to test credibility and veracity, it being proper to allow any question which reasonably tends to explain, contradict, or discredit any testimony given by the witness in chief, or which tends to test his accuracy, memory, veracity, character or credibility. Of course, the right to cross-examine effectively necessarily includes the right to place the testimony of a witness in its proper setting to fairly enable the jury to judge its credibility."

478

*State v. Cox*, 298 Md. 173, 183–84, 468 A.2d 319, 324 (1983) (internal citations omitted).

■ Cross-examination is permissible to elicit facts "tending to discredit the witness by showing his testimony in chief was untrue or biased." *Alford v. U.S.*, 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 624 (1931). The partiality of a witness is "always relevant as discrediting the witness and affecting the weight of his testimony." 3A J. WIGMORE, EVIDENCE § 940, p. 775 (Chadbourn rev.1970). A cross-examiner may also seek to draw out disparities in a witness' testimony. Such pursuit may yield an instance where "the witness who has told one story aforetime and another today has opened the gates to all the vistas of truth which the common law practice of cross-examination and re-examination was invented to explore." EDWARD W. CLEARY, ET AL., MCCORMICK ON EVIDENCE, § 251 at 603 (2d ed.1972). If a witness is not so easily led to contradiction, the "[c]ommon law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted." *Jenkins v. Anderson*, 447 U.S. 231, 239, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86 (1980) (citing 3A J. WIGMORE, EVIDENCE § 1042, at 1056 (Chadbourn rev.1970)).

In the instant case, the trial court improperly precluded petitioner's counsel from the opportunity to pursue these traditional avenues of cross-examination with respect to the video-taped testimony, which the State introduced into evidence after H.C., the child-victim had testified. When the trial court denied petitioner the opportunity to recall H.C. for cross-examination, the court said as follows:

"Well, you have trial strategy, and it may be a decision to ask the witness about a prior inconsistent statement, or it may be a decision to simply point out the differences between testimony here at trial and statement given at the time that she spoke with Miss Henry back in November of 2004. But there was certainly an opportunity to conduct cross-examination."

In this case, the denial of the opportunity to cross-examine after the tape had been admitted "inhibited the ability of the defendant to receive a fair trial." *Martin v. State*, 364 Md. 692, 698, 775 A.2d 385, 388 (2001).

■ The general rule is that *ex parte* statements are excluded from evidence as hearsay unless otherwise permitted by rule or statute. Many states, including Maryland, have enacted statutes, sometimes known as the tender years exception, designed to protect the emotional and psychological health of young children alleged to be victims of sexual abuse and to provide for the admissibility of *ex parte* statements and video-tapes taken under particular circumstances. *See, e.g., State v. Snowden*, 385 Md. 64, 867 A.2d 314 (2005); *Commonwealth v. Kriner*, 915 A.2d 653, 657 (Pa.Super.2007) (quoting *Commonwealth v. Fink*, 791 A.2d 1235, 1248 (Pa.Super.2002) (noting that "[t]he tender years exception allows for the admission of a child's out-of-court statement due to the fragile nature of young victims of sexual abuse")). *See also* Robert P. Mosteller, *Remaking Confrontation Clause and Hearsay Doctrine Under the Challenge of Child Sexual Abuse Prosecutions*, 1993 U. ILL. L.REV. 691 (1993).

■ H.C.'s video-taped interview with the social worker was admitted into evidence pursuant to § 11–304, a carefully crafted exception by the Legislature to the hearsay rule for certain out-of-court statements of child sexual assault victims under the age of twelve and other specified offenses.[5] *See*

---

5. Section 11–304 reads, in pertinent part, as follows:

"(b) Subject to subsections (c), (d), and (e) of this section, the court may admit into evidence in a juvenile court proceeding or in a criminal proceeding an out of court statement to prove the truth of the matter asserted in the statement made by a child victim who:
"(1) is under the age of 12 years; and
"(2) is the alleged victim or the child alleged to need assistance in the case before the court concerning:
(i) child abuse under § 3–601 or § 3–602 of the Criminal Law Article;
(ii) rape or sexual offense under §§ 3–303 through 3–307 of the Criminal Law Article;

(iii) attempted rape or attempted sexual offense in the first degree or in the second degree under §§ 3–309 through 3–312 of the Criminal Law Article; or

(iv) in a juvenile court proceeding, abuse or neglect as defined in § 5–701 of the Family Law Article.

"(c) An out of court statement may be admissible under this section only if the statement was made to and is offered by a person acting lawfully in the course of the person's profession when the statement was made who is:

"(1) a physician;

"(2) a psychologist;

"(3) a nurse;

"(4) a social worker; or

"(5) a principal, vice principal, teacher, or school counselor at a public or private preschool, elementary school, or secondary school.

"(d)(1) Under this section, an out of court statement by a child victim may come into evidence to prove the truth of the matter asserted in the statement:

(i) if the statement is not admissible under any other hearsay exception; and

(ii) regardless of whether the child victim testifies. . . .

"(3) To provide the defendant, child respondent, or alleged offender with an opportunity to prepare a response to the statement, the prosecuting attorney shall serve on the defendant, child respondent, or alleged offender and the attorney for the defendant, child respondent, or alleged offender within a reasonable time before the juvenile court proceeding and at least 20 days before the criminal proceeding in which the statement is to be offered into evidence, notice of:

(i) the State's intention to introduce the statement; and

(ii) the content of the statement.

"(4)(i) The defendant, child respondent, or alleged offender may depose a witness who will testify under this section.

(ii) Unless the State and the defendant, child respondent, or alleged offender agree or the court orders otherwise, the defendant, child respondent, or alleged offender shall file a notice of deposition:

1. in a criminal proceeding, at least 5 days before the date of the deposition; or

2. in a juvenile court proceeding, within a reasonable time before the date of the deposition.

(iii) Except where inconsistent with this paragraph, Maryland Rule 4–261 applies to a deposition taken under this paragraph. "(e)(1) A child victim's out of court statement is admissible under this section only if the statement has particularized guarantees of trustworthiness.

"(2) To determine whether the statement has particularized guarantees of trustworthiness under this section, the court shall consider, but is not limited to, the following factors:

(i) the child victim's personal knowledge of the event;

(ii) the certainty that the statement was made;

(iii) any apparent motive to fabricate or exhibit partiality by the child victim, including interest, bias, corruption, or coercion;

(iv) whether the statement was spontaneous or directly responsive to questions;

§ 11–304(b). The statute sets out the requirements for admissibility, regardless of whether the child victim testifies at the trial; it also provides an opportunity for the defendant to

(v) the timing of the statement;

(vi) whether the child victim's young age makes it unlikely that the child victim fabricated the statement that represents a graphic, detailed account beyond the child victim's expected knowledge and experience;

(vii) the appropriateness of the terminology of the statement to the child victim's age;

(viii) the nature and duration of the abuse or neglect;

(ix) the inner consistency and coherence of the statement;

(x) whether the child victim was suffering pain or distress when making the statement;

(xi) whether extrinsic evidence exists to show the defendant or child respondent had an opportunity to commit the act complained of in the child victim's statement;

(xii) whether the statement was suggested by the use of leading questions; and

(xiii) the credibility of the person testifying about the statement.

"(f) In a hearing outside of the presence of the jury or before the juvenile court proceeding, the court shall:

"(1) make a finding on the record as to the specific guarantees of trustworthiness that are in the statement; and

"(2) determine the admissibility of the statement.

"(g)(1) In making a determination under subsection (f) of this section, the court shall examine the child victim in a proceeding in the judge's chambers, the courtroom, or another suitable location that the public may not attend unless the child victim:

(i) is deceased; or

(ii) is absent from the jurisdiction for good cause shown or the State has been unable to procure the child victim's presence by subpoena or other reasonable means.

"(2) Except as provided in paragraph (3) of this subsection, any defendant or child respondent, attorney for a defendant or child respondent, and the prosecuting attorney may be present when the court hears testimony on whether to admit into evidence the out of court statement of a child victim under this section.

"(3) When the court examines the child victim as paragraph (1) of this subsection requires:

(i) one attorney for each defendant or child respondent, one attorney for the child victim, and one prosecuting attorney may be present at the examination; and

(ii) the court may not allow a defendant or child respondent to be present at the examination.

"(h)(1) This section does not limit the admissibility of a statement under any other applicable hearsay exception or rule of evidence.

"(2) This section does not prohibit the court in a juvenile court proceeding from hearing testimony in the judge's chambers."

depose a child witness who will testify under the statute.[6] In providing for the opportunity to depose a child witness before trial, the statute expresses a clear legislative intent that the defendant have a right to cross-examine the witness, and in our view, the right must be a meaningful one.

Typically, attorneys make the tactical decision as to whether or not to cross-examine a witness. Ordinarily, the court's denial of a request by counsel to recall a witness for cross-examination is reviewed under an abuse of discretion standard. Upon review, if the decision not to cross-examine was a pure tactical and strategic decision, a reviewing court will ordinarily find no abuse of discretion on the part of the trial court. *See, e.g., Deibert v. State,* 150 Md. 687, 693, 133 A. 847, 850 (1926) (stating that when an appellant did not inquire about an issue on cross-examination "[h]is failure did not give him the right to call the witness to the stand again for what was, in effect, a belated cross-examination.").

It is correct that the court gave petitioner an opportunity to cross-examine H.C. after the child completed her direct examination, and petitioner declined to do so. And, the court did nothing to prevent the defense from questioning the witness, to confront H.C., to ask her relevant questions, and to bring out any inconsistencies in her testimony. But the opportunity to cross-examine H.C. was not a meaningful one when it preceded the receipt of the video-tape into evidence. Ordinarily, failure to exercise the opportunity to cross-examine would be considered a waiver of the right. But, the introduction of an *ex parte* statement of a child witness pursuant to § 11–304, well after the child has testified, is no ordinary case. Petitioner did not elect to cross-examine H.C. immediately after her direct testimony because he objected to the admissibility of the videotape. In a case such as this, it is an abuse of discretion to deny petitioner the opportunity to cross-examine on issues arising from the introduction of that evidence.

---

**6.** We do not address the question of whether this statute violates *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177.

H.C. testified before the State offered the tape into evidence, and the State waited until the conclusion of its case-in-chief before it offered the tape into evidence. Counsel indicated to the trial court that there were statements on the videotape that were inconsistent with H.C.'s testimony and he wished to confront her with those statements. For example, when H.C. testified in court, she said that Ethel was in the shower when the purported touching occurred; in the video, she said that Ethel was on the bed with her and the defendant. There were some other inconsistencies as well.

Defense counsel was placed "on the horns of a dilemma." He had objected consistently to the admissibility of the testimony of the social worker and to the admissibility of the videotape. His theory that the videotape and the social worker's testimony was inadmissible on *Crawford* grounds was neither baseless nor frivolous. If counsel had cross-examined H.C. on inconsistencies in her testimony and the videotape, he might well have opened the door for the State to put the entire videotape into evidence. *See, e. g. Brown v. State,* 373 Md. 234, 238–39, 817 A.2d 241, 243–44 (2003) (stating that a party who introduces evidence cannot complain on appeal that the evidence was erroneously admitted). He was placed in a position of forgoing cross-examination, or himself introducing evidence of the video-tape. He was faced also with waiving his objection to the introduction of the video-tape or asking H.C. about statements contained on the video-tape before the tape was introduced. He cannot be faulted for not cross-examining H.C. when she testified in the State's case in chief. Under these circumstances, the trial court abused its discretion in not permitting counsel to recall H.C. for purposes of cross-examination.

An analogous situation arose in Delaware regarding an out-of-court statement of an adult rape victim and the timing of cross-examination. *See Smith v. State,* 669 A.2d 1 (Del.1995). Even though *Smith* pre-dated the Supreme Court's recent pronouncements on the confrontation clause, *see Davis v. Washington,* 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) *and Crawford v. Washington,* 541 U.S. 36, 124 S.Ct.

1354, 158 L.Ed.2d 177, the Court's reasoning regarding the opportunity for cross-examination is instructive. Pursuant to Delaware statute, Del.Code Ann., tit. 11, § 3507 (1994), the State offered the alleged victim's statement into evidence well after the victim had completed her direct, cross-examination and redirect testimony.[7] The court stated as follows:

> "Although Anderson was called as a witness and examined by the State, her statement was not offered into evidence when the State concluded its direct examination. As a result, Smith was left with two equally unsatisfactory alternatives. If he cross-examined Anderson about the statement before it had been offered as evidence, Smith would be calling the jury's attention to a damning statement made by a witness who testified in his favor on direct examination. Alternatively, Smith could ignore the statement and hope that the State had decided not to put it into evidence. By choosing the latter course, Smith lost the opportunity to cross-examine Anderson about the statement."

*Smith,* 669 A.2d at 7–8. The court held that the Delaware statute requires not only the opportunity to cross-examine a declarant, but also requires the opportunity to cross-examine the declarant about the out-of-court statement, and that introduction of the statement cannot be timed so as to place a strategic burden on the non-offering party. *Id.* at 8. The court created a rule for the admissibility of such statements: "the statement must be offered in to evidence no later than the conclusion of the direct examination of the declarant." *Id.* What is clearly the importance of *Smith* is that the introduction of an out-of-court statement should not be timed to strategically disadvantage a defendant or to limit the opportunity for quality cross-examination of the declarant.

---

7. Because the defendant had not objected at trial on the grounds that the witness was not available to be cross-examined, the court reviewed the issue on appeal for plain error. Although the court found the introduction of the out-of-court statement to be error, the court affirmed on the ground that the error was harmless.

The issue of timing of cross-examination of a child sexual assault victim arose in *Vaska v. State,* 135 P.3d 1011 (Alaska 2006). The out-of-court statement at issue was admitted by the court as a prior inconsistent statement. Noting that the practical question at issue in the case was whether the particular manner in which the State chose to present its case at trial could have influenced the defendant's tactical decision as to whether to cross-examine or not, the court stated as follows:

"As the state itself recognizes, Vaska's decision to waive cross-examination at trial reflects a tactical choice. Yet despite this recognition, the state ignores the most likely tactical explanation for Vaska's choice: the state's own strategic decision to cut short T.E.'s testimony, have her declared unavailable, and ask that her earlier statements be admitted on grounds wholly unrelated to her ability to appear as a witness at trial or to be meaningfully cross-examined. Theoretically, of course, Vaska remained free to cross-examine T.E; but as a practical matter, the state's tactical choice gave Vaska no immediate reason to conduct cross-examination, and it suggested no foreseeable reason. Indeed, it appears that the state's most likely purpose in deciding to seek admission at trial under the catchall exception, instead of on alternative grounds that would have required T.E.'s presence, was to spare T.E. from having to face the emotional trauma of cross-examination. From the state's perspective at trial, T.E. had no meaningful testimony to offer, so there was no point in initiating an ongoing dispute over her present ability to testify and be meaningfully cross-examined—a dispute that the state was bound to invite unless it relied on the catchall provision."

*Id.* at 1021.

This case does not require any broad ruling. We are holding that, on the facts before us, the court abused its discretion by not allowing the defense to cross-examine the child once the statement was admitted. Whether a court has abused its discretion usually depends on the particular facts of the case—on the context in which the discretion was exer-

cised—and that is what we address here. The critical facts were as follows:

(1) The defense was aware of the statement, had a copy of it, and knew that, on the whole, it was highly inculpatory but that it also revealed an important inconsistency, which could be used to impeach the witness;

(2) The defense believed that the statement was inadmissible in evidence, both under *Crawford* and because it was unreliable; on balance, the defense concluded that it was more prejudicial than helpful;

(3) The defense moved, *in limine*, that the court exclude the statement and made clear that it would formally object if and when the statement was offered;

(4) The State played coy with whether it really intended to offer the statement, to the end that, when the child testified, it was not clear whether the statement would be offered;

(5) If the statement was not to be admitted, the defense was content not to cross-examine the child; and

(6) If the defense, immediately following direct examination, had cross-examined the child about the content of the statement—the part that was inconsistent with her testimony—it ran a serious risk that, by questioning the child about the inconsistency, most likely the State would be able to introduce the inculpatory parts under the doctrine of verbal completeness, even if the statement would otherwise have been inadmissible.

As we have indicated, the State's deliberate strategy created in this case a real Hobson's Choice for the defense, *i.e.*, to forego cross-examination regarding a glaring inconsistency between the child's out-of-court statement and her testimony on a highly relevant fact, or to waive the efficacy of what may well have been a valid objection to a highly prejudicial piece of evidence. That dilemma, created entirely by the State's trial strategy, could be avoided only by allowing the defense to cross-examine the child after the statement was admitted. The court's refusal to do so constituted an abuse of discretion.

The concurring opinion, though agreeing with that conclusion, would go further and establish a *per se* rule regarding the *scope* of the cross-examination—that, as a matter of law, cross-examination would be restricted to specific contradictions between the out-of-court statement and the child's testimony. That is too rigid. It is also unnecessary and could be hurtful to the child-witness.

The trial court could have controlled the scope of the cross-examination; that, too, is largely discretionary, especially with respect to a child-witness, and there is no need for us to opine as to what a trial court may, in its discretion, allow. A court, in this situation, may be willing to allow, and ordinarily *should* allow, a broader cross-examination if the alternative, mandated by the concurring opinion, would require that the cross-examination be bifurcated, thereby subjecting the child to being cross-examined, and thus having to relive the incident, twice. There certainly would have been no error and no abuse of discretion had the trial court here chosen to allow a greater range of cross-examination than would be permitted by the concurring opinion.

***JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENTS OF CONVICTION, AND TO REMAND TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR A NEW TRIAL. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE COUNTY.***

HARRELL and BATTAGLIA, JJ., Concur.

Concurring Opinion by HARRELL, J., which BATTAGLIA, J., Joins.

I concur in the judgment of the Court, but only on a narrower ground than stated in the Court's opinion. The holding framed by the opinion is that "the court abused its discretion by not allowing the defense to cross-examine the child once the statement was admitted." Op. at 485, 943 A.2d at 628. Although claiming that this does not constitute a

"broad ruling" (*id.*), the Court's reasoning strips away that cloak of denial. The holding is overly broad.

Myer was given an opportunity to cross-examine the victim, called by the State, following the child's live, in-court testimony. He declined. The surmise of the Court's opinion seems a valid one in that his decision to forego cross-examination at that point in the trial in order to discredit or impeach the victim at that time, using what he believed to be conflicting or additional factual assertions found only in her videotaped interview, risked opening the door to wholesale admission of the hitherto unadmitted videotape. Nonetheless, as long as Myer steered clear in cross-examination at that time of factual predicates traceable only to the videotape, he risked nothing. His election not to cross-examine the victim at that juncture cannot be without any consequence.

The unfairness to Myer on this record crept in when, after the videotape was admitted, which assertedly contained statements of fact contradictory to or supplemental to what the victim said on the witness stand, cross-examination as to the "new" information was not allowed. Had the Court's opinion held that cross-examination aimed solely at exploring or developing the contradictory or supplemental statements by the victim in the videotape was what was wrongly denied, I would be at peace with the opinion; however, the opinion seems to encourage the trial judge in this case (and others in future analogous cases) to allow Myer an overly broad cross-examination right, including matters which were cumulative and consistent in both the in-court and videotaped statements, which he waived by not cross-examining the victim following the in-court testimony. That is, in my view, unnecessarily generous based on this record.

Judge BATTAGLIA has authorized me to state that she joins in this concurring opinion.